**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**
No. 00-10197

AVIALL SERVICES INC.,

                    Plaintiff - Counter Defendant - Appellant,

versus

COOPER INDUSTRIES INC.,

                    Defendant - Counter Claimant - Appellee.

Appeal from the United States District Court
For the Northern District of Texas

August 14, 2001

Before WIENER, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Aviall Services, Inc. ("Aviall") appeals the summary judgment dismissal of its contribution claim based on the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. § 9613(f)(1). The district court ruled that Aviall could not seek contribution from Cooper Industries, Inc. ("Cooper") unless Aviall had incurred or at least faced liability under a CERCLA administrative abatement or cost recovery action. We affirm, holding that the text of CERCLA requires this result.

# I

Cooper ran an aircraft engine maintenance business at several of its industrial facilities. The rebuilding of aircraft engines required the use of petroleum and other hazardous substances, some of which seeped into the ground and groundwater through underground storage tanks and spills. Among the industrial facilities contaminated were Love Field, Carter Field and Forest Park (collectively, the "Facilities"). In 1981, Cooper sold its aircraft engine maintenance business, along with the Facilities, to Aviall. Several years later, Aviall began discovering some of the contamination that had occurred at the Facilities. Aviall admits, though, that the pollution of the Facilities continued under its stewardship as well.

Aviall notified the Texas Natural Resource Conservation Commission ("TNRCC") of the contamination at its Facilities. In turn, the TNRCC sent several letters to Aviall informing the company that it was in violation of Texas state environmental laws. Notably, the Environmental Protection Agency ("EPA") never contacted Aviall or designated the Facilities as contaminated sites. In 1984, Aviall began a decade-long environmental cleanup, spending millions of dollars. In early 1995, Aviall for the first time contacted Cooper seeking reimbursement. Aviall eventually sold the Facilities to another private party, but it contractually retained a continuing responsibility for the environmental cleanup.

In 1997, Aviall filed this lawsuit against Cooper based in part on CERCLA's § 107(a) "cost recovery" provision, which allows innocent persons to recover environmental response costs from liable parties. Aviall later amended its complaint dropping the § 107(a) cost recovery claim, while adding contribution claims under § 113(f)(1) of CERCLA as well as under the Texas Solid Waste Disposal Act, TEX. HEALTH & SAFETY CODE ANN. § 361.344(a) (West 1992 & Supp. 2001), and the

Texas Water Code, TEX. WATER CODE ANN. § 26.3513(j) (West 2000). The district court granted Cooper's motion for summary judgment, dismissing the § 113(f)(1) CERCLA contribution claim and then declining to exercise supplemental jurisdiction over the state law contribution claims. Relying on the plain language of the statute, the court held that Aviall could not assert a § 113(f)(1) contribution claim unless it was subject to a prior or pending CERCLA action involving either § 106 (federal administrative abatement action) or § 107(a) (cost recovery action by the government or a private party).[1]

On appeal, Aviall admits that neither the EPA nor any private party has filed a CERCLA claim against it. Notwithstanding this lack of federal action against it, Aviall claims that it can pursue CERCLA-based contribution because it voluntarily cleaned up the contamination, or at least it did so at the behest of a *state* environmental agency. Before discussing the merits of these arguments, we briefly review the structure and history of CERCLA.

## II

Congress enacted CERCLA to facilitate the cleanup of hazardous waste sites, and to shift the costs of environmental response from the taxpayers to the parties who benefitted from the use or disposal of the hazardous substances. *See OHM Remediation Serv. v. Evans Cooperage Co., Inc.*, 116 F.3d 1574, 1578 (5th Cir. 1997). The statute allows parties who incur environmental cleanup costs to recover from persons commonly referred to as "potentially responsible parties" ("PRPs"). *See* 42 U.S.C. § 9607(a). Subject to certain statutory exceptions, PRPs are broadly defined to

---

[1] The pertinent parts of the contribution provision read: "Any person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)], *during or following* any civil action under [§ 106] or under [§ 107(a)]. . . . No thing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§ 106] or [§ 107(a)]." 42 U.S.C. § 9613(f) (emphasis added).

include: (1) current owners and operators of vessels or facilities that accepted hazardous substances; (2) past owners or operators of facilities where hazardous substances were disposed; (3) persons who by contract or agreement arranged for the disposal or transport of hazardous substances; and (4) persons who accept or accepted hazardous substances for transport to disposal or treatment facilities. *See* 42 U.S.C. § 9607(a).

CERCLA provides two ways for parties to recover environmental response costs. The § 107(a) cost recovery provision permits the government or an "innocent" private party to recoup cleanup costs from PRPs. *See* 42 U.S.C. § 9607(a)(4) (stating that PRPs "shall be liable for—(A) all costs of removal or remedial action incurred by the United States Government or a State . . . [and] (B) any other necessary costs of response incurred by any other person. . ."). PRPs are held jointly and severally liable under this cost recovery provision. The other method of recovering environmental response costs involves § 113(f)(1), the contribution provision. *See* 42 U.S.C. § 9613(f)(1). It allows a PRP to seek contribution from other PRPs if it assumed a disproportionate share of the cleanup costs. Under § 113(f)(1), courts have the discretion to allocate the response costs equitably among the various PRPs. CERCLA additionally includes a provision (§ 106) for the federal government to seek an administrative abatement order (enforceable in court) against PRPs. *See* 42 U.S.C. § 9606.

Courts have elaborated on the distinction between a contribution action under § 113(f)(1) and a cost recovery action under § 107(a). A contribution claim involves actions between PRPs, while a cost recovery suit is initiated by a non-responsible party against a PRP. *See, e.g., OHM*, 116 F.3d at 1583. Thus, a PRP cannot file a § 107(a) suit against another PRP; it must pursue a contribution action instead. *See id.* In the present case, Aviall and Cooper concede that they are both PRPs

because they both contributed to the contamination of the Facilities.[2] The issue presented in this case is whether a PRP seeking a § 113(f)(1) contribution suit must have an ongoing or adjudged § 106 or § 107(a) action against it.

### III

After examining the text and structure of CERCLA, we hold that a party can seek a § 113(f)(1) contribution claim only if there is a prior or pending federal § 106 or § 107(a) action against it.[3] While no directly binding case law exists, we believe that the majority of courts that have addressed this issue agree with our textual analysis. Moreover, the legislative history, as a secondary source, reinforces our interpretation. We review the district court's grant of summary judgment de novo, construing all facts and inferences in the light most favorable to the nonmoving party. *See Uniroyal Chem. Co. v. Deltech Corp.*, 160 F.3d 238, 241 (5th Cir. 1998).

### A

Any analysis of a statutory provision must be tethered and true to the text. *See United States v. Alvarez-Sanchez*, 511 U.S. 350, 356, 114 S.Ct. 1599, 1603, 128 L.Ed.2d. 319 (1994) ("When interpreting a statute, we look first and foremost to its text"). The contribution section of CERCLA states: "Any person may seek contribution from any other person who is liable or potentially liable under [§ 107(a)], *during or following* any civil action under [§ 106] or under [§ 107(a)]." 42 U.S.C.

---

[2]     Aviall accordingly dropped its § 107(a) claim in its amended complaint.

[3]     Cooper offered two additional, independent arguments why Aviall's contribution claim should be barred: (1) it failed to notify timely the EPA and the Attorney General of its private party CERCLA action; and (2) it did not comply with the National Contingency Plan by failing to provide adequate opportunity for public participation. We need not address these two arguments, given that we bar Aviall's contribution claim because of the lack of a pending or adjudged CERCLA claim.

§ 9613(f) (emphasis added).

A plain language reading of the statute requires a PRP seeking contribution from other PRPs to have filed a § 113(f)(1) claim "during or following" a federal CERCLA action against it. Aviall concedes that it did not file its § 113(f)(1) contribution claim "during or following" a § 106 or § 107(a) action against it, but it argues that neither action is necessary as long as it voluntarily cleaned up the Facilities. It alternatively contends that it can seek contribution because the TNRCC compelled it to clean up the Facilities—even though CERCLA does not expressly specify that contributions are allowed in the context of state agency enforcement orders.

We begin our analysis with the word "contribution" itself. The word "contribution" is defined as the "[r]ight of one who has discharged a common liability to recover of another also liable . . . . Under principle of 'contribution,' a tort-feasor against whom a judgment is rendered is entitled to recover proportional shares of judgment from other joint tort-feasors . . . ." BLACK'S LAW DICTIONARY 329 (6th ed. 1990). As further explained in Sections C and D, we believe that the commonly accepted definition of contribution requires a tortfeasor to first face judgment before it can seek contribution from other parties.

Notwithstanding the definition of "contribution," Aviall claims that the statutory language of CERCLA supports its view. It first notes that under § 113(f)(1), "[a]ny person *may* seek contribution . . . during or following any civil action under [§ 106] or under [§ 107(a)]." 42 U.S.C. § 9613(f) (emphasis added). The key question is whether the use of the word "may" signifies an exclusive means for contribution (as in a party "may only" or "must" seek contribution during or following a CERCLA action), or a non-exclusive means for contribution (as in a party "may choose one of several ways" to seek contribution, and one way is during or following a CERCLA action). Aviall

-6-

adopts the latter view, arguing that § 113(f)(1) does not affirmatively exclude contribution suits initiated under other circumstances. If the former view was intended, Aviall claims, Congress would have stated that a party "may only" seek contribution during or following CERCLA actions.

Aviall's analysis is inconsistent with our canons of statutory construction. Depending on the context, the word "may" can have the permissive definition of "have liberty to," or alternatively, it can denote exclusivity as in "shall [or] must." WEBSTER THIRD NEW INTERNATIONAL DICTIONARY 1396 (3d ed. 1993). We have held that when the word "may" is used as an enabling provision creating a cause of action (as it is here), it establishes an exclusive cause of action and means "shall" or "must."[4] Accordingly, a party can file a contribution claim only if it has been alleged or deemed liable under § 107(a) or if the federal government has ordered it to clean up contaminated sites under § 106.

Our reasoning in *Resolution Trust Corp v. Miramon*, 22 F.3d 1357 (5th Cir. 1994), is instructive. In *Miramon*, the Resolution Trust Corporation disputed the district court's interpretation of the Financial Institutions Reform, Recovery and Enforcement Act, which states that a "director or officer . . . *may* be held personally liable for monetary damages in any civil action . . . for gross negligence." *Id.* at 1360-61 (emphasis added). The issue was whether or not the statute adopted an exclusive gross negligence standard. The RTC offered the exact same argument that Aviall maintains today: it argued that "[i]f that section were meant to be exclusive . . . it would have said 'may only.'" *Id.* at 1361. We rejected that argument, holding that the word "may," when used in the context of

---

[4]     Thus, we reject Aviall's argument that Congress would have used the words "may only" if it had intended to create an exclusive cause of action. It has long been recognized that the word "may" can mean "shall" or "must . . . esp[ecially] in deeds, contracts, and statutes." WEBSTER THIRD NEW INTERNATIONAL DICTIONARY 1396 (3d ed. 1993).

establishing an enabling provision, creates an exclusive cause of action. *See id.* at 361 n.5 ("Read in context, the word 'may' refers to the right of the [RTC] to bring an action under this section. 'May' cannot reasonably be read to qualify the gross negligence standard"). Similarly in our case, the word "may" in CERCLA is used in the context of empowering a contribution action. Simply put, when a statute creates a cause of action, we must narrowly read the word "may" as establishing an exclusive enabling provision. Otherwise, we would "undermine[] the very cause of action the section creates" because the statute would then essentially open the floodgates for parties to pursue causes of action through unspecified and unnamed methods. *Id.* at 1361. In fact, it would have been pointless for Congress to have expressly limited contribution suits to "during or following" a CERCLA action if a party could ignore that limitation and still seek contribution.

Aviall also relies on the last sentence of § 113(f)(1), the general savings clause: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§ 106] or [§ 107]." 42 U.S.C. § 9613(f). Aviall states that this clause reinforces its view that Congress intended to allow contribution suits, regardless of whether the parties are CERCLA defendants in a § 106 or § 107(a) action.

We reject Aviall's reading of the savings clause, and instead interpret it to mean that the statute does not affect a party's ability to bring contribution actions based on *state* law. If we adopted Aviall's interpretation, it would render superfluous the first sentence of § 113(f)(1), the enabling clause. As we noted in analyzing that sentence, why would Congress have incorporated an enabling provision (allowing parties to seek contribution "during or following" a § 106 or § 107(a) action) if a party could bring a contribution claim regardless of the enabling clause's "during or following" limitation? It makes little sense that Congress would codify the "during or following"

limitation, and then expressly invalidate it within the very same section. Thus, the dissent is left to argue that the "during or following a civil action" language is not actually a limitation on when a party can seek contribution but rather "an express reaffirmation of the right to seek contribution before judgment," and further that the savings clause serves no purpose other than to "make abundantly clear" that point—just in case a reader might place an "overly restrictive reading" on the words "during or following." Put another way, the dissent seemingly argues that Congress deliberately made the meaning of the enabling provision unclear, and then decided to clarify that ambiguity by adding a savings clause in the same section. We reject such an interpretation of the contribution section.

Additionally, we have held that "[r]eading the savings clause to nullify the substantive portion of the section would 'violate the elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.'" *Miramon*, 22 F.3d at 1361. Aviall's reading would further violate another canon of construction that the specific governs the general. *See Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 384, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 (1992) (interpreting a savings clause). We will not read "CERCLA's savings clause . . . to gut provisions of CERCLA." *PMC, Inc. v. Sherwins-Williams Co.*, 151 F.3d 610, 618 (7th Cir. 1998) (analyzing the CERCLA savings clause under 42 U.S.C. § 9652(d)).

A more reasonable reading of the savings clause suggests that Congress wanted to "merely nix an inference that the statute in which it appears is intended to be the exclusive remedy for harms caused by the violation of the statute." *Id.* More specifically, the savings clause was likely intended to preserve state law-based claims of contribution. *See id.* ("The purpose of CERCLA's savings clause is to preserve to victims of toxic wastes the other remedies they may have under federal or

state law"); *see also Rockwell Int'l Corp. v. IU Int'l Corp.*, 702 F.Supp. 1384, 1389 (N.D. Ill. 1988) ("[W]e view the last sentence of [§ 113(f)(1)] . . . as an assurance that contribution remains available in other contexts, such as through Rockwell's claims for contribution under Illinois law").  Indeed, Aviall has done just that: it has filed contribution claims against Cooper under Texas state law, in addition to its § 113(f)(1) suit.

In short, we hold that, as a matter of statutory text and structure, CERCLA requires a party seeking contribution to be, or have been, a defendant in a § 106 or § 107(a) action.[5]

**B**

The legislative history of CERCLA reinforces our analysis of the statutory text.  While legislative history sometimes is of limited value due to its potential ambiguity, it can nevertheless be useful when it overwhelmingly supports one side, as it does in this case.  *See Boureslan v. Aramco*, 857 F.2d 1014, 1018 (5th Cir. 1988) (stating that "[l]egislative history is relegated to a secondary source behind the language of the statute in determining congressional intent; even in its secondary role legislative history must be used cautiously.")

The original CERCLA statute did not explicitly state whether one PRP could sue another PRP for contribution, although several district courts had implied such a right.  In 1986, Congress

---

[5]    The dissenting opinion argues that our reading of the statute is "contorted" because we acknowledge that a federal abatement *order* under § 106 can trigger the right of contribution under § 113(f)(1), which allows contributions "during or following any civil *action* under section 9606[§ 106] of this title or under section 9607(a) [§ 107(a)] of this title." 42 U.S.C. § 9613(f)(1) (emphasis added).  The dissent states that the word "action" usually refers to "lawsuits," and thus cannot include a federal abatement order.  The language and structure of the statute suggest that the definition of the word "action" under § 113(f)(1) includes abatement orders.  The contribution provision explicitly refers to § 106, which is entitled "Abatement actions."  Under this heading of "Abatement actions," the section allows the President to "issu[e] such orders as may be necessary to protect public health and welfare and environment," and provides that the government can enforce these orders in court if a party refuses to comply with them.  42 U.S.C. § 9606(a), (b).

-10-

amended CERCLA with the Superfund Amendments and Reauthorization Act ("SARA"), codifying an express contribution provision in § 113(f)(1). *See* 42 U.S.C. § 9613(f)(1). While Congress drafted CERCLA as a broad remedial statute, Congress equally made it clear in passing SARA that it intended only a *limited* federal right of contribution.

A House of Representatives conference report on SARA emphasized that a party seeking contribution must have first incurred (or at least must face potential) cleanup costs pursuant to either § 107(a) or § 106. The report stated, "This section clarifies and confirms the right of a person *held jointly and severally liable under CERCLA* to seek contribution from other potentially liable parties." H.R. REP. NO. 00-253(I) (1985), *reprinted in* U.S.C.C.A.N. 2835, 1985 WL 25943 at 26 (Leg.Hist.) (emphasis added). The Senate's SARA report echoed the House's legislative intent. It explained that the new contribution provision permits "parties *found liable under sections 106 or 107* [to] have a right of contribution, allowing them to sue other liable or potentially liable parties to recover a portion of the costs paid." S. REP. NO. 99-11 at 43 (1985) (emphasis added).

The House report added that a contribution action exists even if a CERCLA action is merely pending: "The section contemplates that if an action under section 106 or 107 of the Act is under way, any related claims for contribution or indemnification may be brought in such an action." H.R. REP. NO. 00-253(I), 1985 WL 25943 at 26. The legislative history never mentions that SARA intended to allow contribution in the absence of either a pending or prior § 106 or § 107(a) action. The House report's emphasis that even a pending CERCLA claim is sufficient to allow contribution suits suggests that a PRP seeking contribution must, at the very least, have a CERCLA suit filed against it. As the House report declared, § 113(f)(1) was added to "confirm[] a Federal right of contribution or indemnification for persons alleged or held to be liable under section 106 or 107 of

CERCLA." *Id.*

**C**

The majority of the courts addressing § 113(f)(1) have agreed with our textual analysis. No federal circuit has yet directly weighed in on this question, but several district courts have discussed when a party can file a contribution action.

A helpful district court decision is *Estes v. Scotsman Group, Inc.*, 16 F.Supp.2d 983 (C.D. Ill. 1998), a case factually similar to Aviall's situation. In *Estes*, Nicholas Estes purchased an industrial site contaminated with hazardous substances, which he moved and handled in violation of environmental regulatory guidelines. After the Illinois Environmental Protection Agency sent Estes an enforcement notice letter, he undertook a cleanup of the site. Estes then filed a CERCLA claim based on §107(a) and § 113(f)(1) against the prior owner. The district court dismissed the §107(a) cost recovery action because it held that Estes, as a PRP, could not file a cost recovery suit. The court then relied on the plain meaning of the statute to hold that Estes could not seek contribution under § 113(f)(1) unless that action was "during or following" a cost recovery suit or a federal administrative order against Estes. Because Estes was not a defendant in a CERCLA action, the court dismissed his § 113(f)(1) claim. *See id.* at 989 ("Section 113(f) [claim] should be dismissed because there is no §106 or § 107 claim pending"). It did not matter to the court that Estes had received an enforcement notice letter from the state environmental agency, or that he may have cleaned up the sites voluntarily.

Similarly, another district court dismissed a PRP's contribution claim as "premature and improper" because the PRP was "yet to be found liable" under CERCLA. *See Deby, Inc. v. Cooper Indus.*, No. 99C2464, 2000 WL 263985, *6 (N.D. Ill. Feb. 29, 2000) ("Contribution is a remedy

available to parties held liable, through judgment or settlement, in some damages action. . . . To receive actual compensation . . . the party must have been found liable as a defendant in an earlier or pending action.") (internal citations omitted).  Several other district courts have reaffirmed this textual analysis of CERCLA's contribution provision.  *See United States v. Compaction Sys. Corp.*, 88 F.Supp.2d. 339, 350 (D.N.J. 1999) ("If the Settlors, by settling with the United States, meet the requirements of liability under Section 107(a) . . . Settlors may pursue apportionment under Section 113(f)(1) for that part of their expenditures that exceeds its share of liability"); *Southdown v. Allen*, 119 F.Supp.2d 1223, 1245 n.41 (N.D. Ala. 2000) (citing the district court opinion of *Aviall v. Cooper* for the proposition that "[o]nce the district court determines who are responsible parties under § 107(a), the next step under § 113(f) is to allocate responsibility among the parties.") (citations omitted).[6]

In addition to these district courts, two Circuit courts—including this one—have suggested in dicta that a party cannot file a contribution claim unless it is a defendant in a federal cost recovery or administrative action.  The Seventh Circuit analyzed the "during or following" language in § 113(f)(1), and said that "a § 106 or § 107(a) action apparently must either be ongoing or already completed before § 113(f)(1) is available." *Rumpke of Ind., Inc. v. Cummins Engine Co., Inc.*, 107 F.3d 1235, 1241 (7th Cir. 1997).  While the Seventh Circuit's dicta, of course, does not bind this court, its textual analysis of § 113(f)(1) supports our interpretation of the contribution clause.  This

---

[6]     We note that while some district courts agree that a party filing a § 113(f)(1) action requires a prior or pending § 106 or § 107(a) claim against it, they add that a party who does not face such a claim can at least ask for a declaratory judgment in the event that it is found liable under CERCLA.  *See Rockwell*, 702 F.Supp. 1384 (N.D. Ill. 1988); *Ameritrust Co. Nat'l Assoc. v. The Lamson & Sessions Co.*, No. 1:92CV008, 1992 WL 738774 (N.D. Ohio May 21,1992); *Alloy Briquetting Corp. v. Niagara Vest, Inc.*, 756 F.Supp. 713 (W.D.N.Y. 1991).

Circuit has similarly intimated that a § 106 or § 107(a) action must be pending or adjudicated for a party to pursue contribution costs. *See OHM*, 116 F.3d at 1574. Although *OHM* only addressed whether a PRP was limited to a contribution action, we nevertheless discussed the contours of § 113(f)(1), noting that it "allows parties to bring contribution actions at least as soon as they are sued under CERCLA." *Id.* at 1582. We then examined the common law roots of contribution, and implied that a party must be alleged or held liable before it can seek contribution: "Under the principle of 'contribution,' a tort-feasor *against whom a judgment is rendered* is entitled to recover proportional shares of judgment from other joint tort-feasors." *Id.* at 1582 (*citing* BLACK'S LAW DICTIONARY 328 (6th ed. 1990)) (emphasis added). Our reading of CERCLA's contribution provision is consistent with the common law definition: a contribution action can commence only if a party has already been found liable or faces potential liability.

A few district court cases have adopted the contrary view that a PRP can bring a § 113(f)(1) claim without first incurring or at least facing liability under either § 107(a) or § 106. *See Johnson County Airport Comm'n v. Parsonitt Co., Inc.*, 916 F.Supp.1090, 1095 (D. Kan. 1996); *Ninth Ave. Remedial Group v. Allis Chalmers Corp.*, 974 F.Supp. 684 (N.D. Ind. 1997); *Mathis v. Velsicol Chem. Corp.*, 786 F.Supp. 971 (N.D. Ga. 1991). We disagree with the analysis in these cases. For example, in *Johnson County Airport*, the district court allowed the contribution suit by relying on § 113(f)(1)'s savings clause. *See id.* (noting that the savings clause states that "nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under § 9606 or § 9607 of this title"). As we explained earlier in this opinion, the savings clause was only intended to preserve state-based contribution actions. Any other interpretation of the savings clause would render the enabling clause's "during or following"

-14-

limitation a mere surplusage.

Aviall cites several other cases to support its contention that a § 106 or § 107(a) action is not required. None of them, however, is apposite. In *Geraghty & Miller, Inc. v. Conoco, Inc.*, 234 F.3d 917 (5th Cir. 2000), G&M filed a private CERCLA claim against Conoco/Vista, who filed a counterclaim seeking relief under § 107(a) and § 113(f)(1). Later, G&M voluntarily dismissed its CERCLA claim, while Conoco/Vista dropped its § 107(a) claim, leaving only its § 113(f)(1) counterclaim. Aviall points out that the Fifth Circuit allowed Conoco/Vista's § 113(f)(1) contribution action to proceed.

Aviall's reliance on *Geraghty & Miller* is misplaced. First, unlike Aviall—which had never been a defendant in any CERCLA action—Conoco/Vista was a CERCLA defendant at the time it filed its contribution claim against G&M, and thus had met § 113(f)(1)'s "during or following" requirement. *Cf. OHM*, 116 F.3d at 1582 (stating that a party may be "potentially liable" in the context of a contribution claim if it is "simply . . . being sued under the statute"). Second, while *Geraghty & Miller* contains some helpful language for Aviall, we did not directly address whether a contribution suit could proceed without a prior or pending CERCLA action. Rather, we considered the only issue presented to us: which statute of limitation applies if a party seeks contribution but none of the triggering events occurs.[7] G&M never raised the issue of whether Conoco/Vista could pursue its contribution claim, and thus the court did not directly address it.

Similarly, *Sun Co., Inc. v. Browning-Ferris, Inc.*, 124 F.3d 1187 (10th Cir. 1997), mentioned

---

[7] The statute of limitations for a § 107(a) claim is three years, while it is six years for § 113(f)(1). The statute provides three triggering events for a § 113(f)(1) claim: a prior judgment, an administrative order, or a judicially approved settlement. None of the triggering events occurred in Conoco/Vista's case. The court thus addressed which statute of limitations applies in these "gap" cases.

that a PRP might be able to undertake cleanup voluntarily. This dicta, however, was said only in the context of the appropriate statute of limitations period. *See also United Tech. Corp. v. Browning-Ferris Industries, Inc.*, 33 F.3d 96, 99 n.8 (1st Cir. 1994) (noting in dicta that "[i]t is possible that. . .a PRP who spontaneously initiates a cleanup without governmental prodding might be able to pursue an implied right of contribution under 42 U.S.C. § 9607(c)," but stating that it is "a matter on which we take no view").

Aviall also cites favorable language from *Centerior Serv. Co. v. Acme Scrap Iron & Metal Corp.*, 153 F.3d 344, 351 (6th Cir. 1998) ("It was enough that a plaintiff act under some compulsion or legal obligation to an injured when he or she discharged the payment"). The Sixth Circuit's ruling can be distinguished factually because the plaintiff in *Centerior* initiated a cleanup after the EPA had issued an administrative order under § 106. *See id.* at 346. Aviall has not received any such order from the EPA. Indeed, the *Centerior* court cautioned, "This case does not involve a PRP who initiated cleanup voluntarily without any governmental prodding, and we express no opinion" on that point. *Id.* at 352 n.10.

Lastly, Aviall lists a string of cases where a PRP undertook cleanup and then filed for contribution, although only a state agency had issued an administrative order against the PRP. *See, e.g., Amoco Oil Co. v. Borden, Inc.*, 889 F.2d 664 (5th Cir. 1989). Aviall thus argues that the TNRCC's administrative orders were sufficient to allow it to proceed with its § 113(f)(1) claim. The facts section of these opinions admittedly mention only state agency enforcement. However, these cases are not dispositive for the simple fact that the parties for whatever reason did not raise the specific issue presented in our case: whether a PRP can seek contribution in the absence of a

CERCLA action against it.[8]

**D**

Finally, Aviall makes a general po licy argument that the district court's ruling would discourage voluntary cleanups because parties would not be able to seek contribution unless they were actually sued or faced EPA administrative orders. Some courts have conceded this disincentive, but have nevertheless ruled that Congress required this result. *See Rumpke*, 107 F.3d at 1240 ("We acknowledge, as other courts have, that this seems to provide a disincentive for parties voluntarily to undertake cleanup operations, because a § 106 or § 107(a) action apparently must either be ongoing or already completed before § 113(f)(1) is available. This appears to be what the statute requires, however"). We agree that the text trumps policy preferences, and that we cannot substitute Congress' wishes with our own.

In any event, we believe that our interpretation of the statute is wholly consistent with the policy goals of CERCLA. When Congress passed SARA, it did not intend to create an expansive federal cause of action. As the legislative history shows, Congress wanted only a limited right of contribution when parties are found or alleged to be liable under CERCLA. *See* S. REP. NO. 99-11 at 44 (stating that § 113(f)(1) "clarifies and confirms the [judicially recognized] right of a person held jointly and severally liable" to seek contributions). It seems unlikely that Congress enacted a contribution right broad enough to encompass Aviall's situation, where neither the federal government nor any private party has filed a CERCLA action against it, and the EPA has not

---

[8]     For the same reason, we reject Aviall's argument that the Seventh Circuit in *PMC*, 151 F.3d at 610, implicitly overruled *Estes*, 16 F.Supp.2d at 983, which held that a § 113(f)(1) suit is invalid without a § 106 or § 107(a) action. In *PMC,* one party cleaned up the sites at the behest of the state agency and then sought contribution, but the opposing party never raised or disputed whether such contribution actions were permissible.

-17-

designated Aviall's Facilities as contaminated sites. Furthermore, Congress probably did not intend to go beyond the traditional common law definition of contribution in drafting CERCLA's contribution provision. *See OHM,* 116 F.3d at 1574 (defining the common law definition of contribution as requiring a pending or prior judgment). In short, we do not believe that Congress wanted to afford a federally-based contribution right to a party merely because a state agency had found it to have violated a state environmental law.

We also doubt that our interpretation of § 113(f)(1) will necessarily discourage voluntary cleanups. Parties may be able to rely on state environmental laws to recover costs from other liable parties. Indeed, Aviall is alternatively seeking contribution from Cooper based on two Texas statutes. That option remains open despite our ruling today.

## IV

After examining CERCLA's text, legislative history and case law, we hold that a PRP seeking contribution from other PRPs under § 113(f)(1) must have a pending or adjudged § 106 administrative order or § 107(a) cost recovery action against it.

AFFIRMED.

WIENER, Circuit Judge, dissenting:

In reaching its holding that a PRP can only sue another PRP on a § 113(f)(1) contribution claim if a § 106 administrative order or § 107(a) action has been brought against it, the panel majority claims to have applied a "plain-meaning" analysis to the statute; yet it obviously has glossed over clear statutory language declaring that "[n]othing in [§ 113(f)(1)] shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§106] . . . or [§107(a)][.]"[9] I respectfully dissent because I am convinced that a full and fair reading of § 113(f)(1) in the context of CERCLA as a whole —— and without judicially legislating into that section of the statute two words that are indispensable to the majority's position but that Congress elected to omit —— does not require a PRP seeking contribution from another PRP for CERCLA liability to wait until a § 106(a) order or § 107(a) action is filed against it.

I.

The Text

Neither I nor anyone else can quarrel with the majority's incantation of the truism that when we analyze a statute we must look first and foremost to its language. Accordingly, I begin with the full text of § 113(f)(1):

> Any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) [§ 107(a)] of this title, during or following any civil action under section 9606 [§ 106] of this title or under section 9607(a) [§ 107(a)] of this title. Such claims shall be brought in accordance with this section and the Federal Rules of Civil Procedure, and shall be governed by Federal law. In resolving contribution claims, the court may allocate response costs among

---

[9]42 U.S.C. § 9613(f)(1) (emphasis added).

liable parties using such equitable factors as the court determines are appropriate. Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title.[10]

We cannot simply analyze statutory terms in a vacuum, however, but are constrained to consider them in the context of the statute as a whole.[11] The majority perverts this canon of statutory construction by seizing on and unduly elevating the phrase "during or following" in § 113(f)(1) to the pedestal of exclusivity while (1) trivializing Congress's palpable (and presumably intentional) refusal to insert the word "only" to modify the phrase "during or following any civil action" in the first sentence of this section or to insert the word "state" to modify the phrase "action for contribution" in the final sentence (the "savings clause"), (2) ignoring the universally accepted legal meaning of "civil action" as congruent with and limited to "lawsuit," (3) shunning the full import and significance of the contextually critical but statutorily undefined term "contribution," and (4) refusing to recognize the breadth of the savings clause. I submit, and shall proceed to demonstrate, that these distortions of the methodology of statutory construction mortally wound the majority's announced exercise of that process.

For openers, nowhere does the plain language of the statute specify that actions for contribution are allowed "only" during or following litigation under CERCLA. Thus the majority's holding —— "that a party can seek a § 113(f)(1) contribution claim <u>only</u> if there is a prior or pending federal § 106 or § 107(a) action against it" (emphasis added) —— boldly rewrites the statute by

---

[10]<u>Id.</u>

[11]<u>See</u> <u>Gade v. National Solid Wastes Management Assn.</u>, 595 U.S. 88, 99 (1992) ("[W]e must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law.") (internal quotation marks and citations omitted, brackets in original).

imposing the extra-congressional restriction that the savings clause itself affirmatively rejects: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§ 106] of this title or [§ 107(a)] of this title."[12]  I find baffling the majority's dismissive reference to Aviall's argument —— that the absence of the word "only" from the statute at least raises a question as to whether the "during or following" language is exclusive —— as "inconsistent with our canons of statutory construction" because I am aware of no canon that gives the judiciary a license to rewrite statutory language.  To the contrary, it is not our province to add even one word to a statute —— here, to restrict its reach —— when Congress itself has chosen not to include that word and thus not to limit the scope of the statute.  It is obvious that, by inserting the word "only" into the statute, the majority has converted a permissive provision to one of exclusivity.  When Congress wants to make a statute exclusive, it certainly knows how to do so.[13]

The majority's related attempt to cabin the savings clause by insisting that it means nothing more than that "the statute does not affect a party's ability to bring contribution actions based on state law" is yet another judicial trespass on the legislative turf.  In this instance, the majority's interpretation of the savings clause requires still another insertion of an omitted word —— "state" —— thereby creating a distinction that Congress did not see fit to make and that we of the "Third Branch" should not presume to legislate.  When Congress intends to distinguish between federal and state law, it certainly knows how to do so.  For instance, CERCLA's general savings clause provides,

> Nothing in this chapter shall affect or modify in any way the

_____

[12]See 42 U.S.C. § 9613(f)(1) (emphasis added).

[13]See, e.g., 2 U.S.C. § 437d(e) ("Except as provided in section 437g(a)(8) of this title, the power of the Commission to initiate civil actions under subsection (a)(6) of this section shall be the exclusive civil remedy for the enforcement of the provisions of this Act.").

-21-

> obligations or liabilities of any person under <u>other</u> <u>Federal or State</u>
> <u>law, including common law</u>, with respect to releases of hazardous
> substances or other pollutants or contaminants.[14]

If, as the majority contends, Congress meant for the savings clause merely to acknowledge that a party seeking contribution for environmental clean-up may bring a <u>state</u> action in response to <u>state</u> orders or judgments (something Congress need not say or do because —— short of making CERCLA preemptive —— it cannot prohibit it) surely Congress would have made that distinction explicit, as it did in CERCLA's general savings clause.[15]

Second, the majority's own conclusion that a PRP seeking contribution from other PRPs "must have a pending or adjudged § 106 <u>administrative order</u> or § 107(a) cost recovery action against it" (emphasis added) puts the lie to its contorted reading of the savings clause. Section 113(f)(1) states that a PRP may seek contribution "during or following any <u>civil action</u> under [§ 106] or under [§ 107(a)]."[16] Administrative orders are not "civil actions." They are not "actions" at all.[17] And no amount of saying so can make it so. The majority's Orwellian insistence that the term "civil actions" includes "administrative orders" stretches the language of the statute beyond the breaking point —— needlessly, because the savings clause makes clear that "the absence of a civil action under [§ 106]"

---

[14]42 U.S.C. § 9652(d).

[15]The majority's reliance on <u>PMC, Inc. v. Sherwin-Williams Co.</u>, 151 F.3d 610 (7th Cir. 1998), is thus misplaced, as the analysis in that case focused on CERCLA's general savings clause with its express preservation of state-law claims.

[16]<u>See</u> 42 U.S.C. § 9613(f)(1) (emphasis added). Section 106(a) authorizes an administrative order requiring a private party to clean up a site. <u>See</u> 42 U.S.C. § 9606(a). If the party refuses to do so, then § 106(b)(1) authorizes the EPA to bring an action in federal district court to enforce the order. <u>See</u> 42 U.S.C. § 9606(b)(1).

[17]<u>See</u> Black's Law Dictionary 28 (6th ed. 1990) ("['Action'] in its usual legal sense means a lawsuit brought in a court[.]").

is not fatal to a PRP's attempt to seek contribution under § 113(f)(1).[18]

The majority cannot have it both ways. If, as the majority claims, the language of the savings clause means only that § 113(f)(1) does not preempt state-law contribution claims, then not even an abatement order issued pursuant to § 106(a) triggers a PRP's right to seek contribution under § 113(f)(1), because such an administrative order is not a "civil action" during or following which a contribution claim may only, as the majority would have it, be brought. No amount of interpretive sleight-of-hand on the majority's part can avoid this logic. Thus the majority's assertion that a PRP can file a contribution claim "if the government has ordered it to clean up contaminated sites under § 106" flatly contradicts its own (erroneous) interpretation of the savings clause as merely preserving state-law remedies. When properly interpreted, the language of the savings clause makes clear that a PRP may "bring an action for contribution <u>in the absence of a civil action</u> under [§ 106] . . . or [§ 107(a)]"[19] —— and I see nothing in the statute to justify the majority's dubious distinction between <u>federal</u> administrative orders, which, as even the majority agrees, trigger contribution claims under § 113(f)(1), and <u>state</u> administrative orders which, the majority has decreed, somehow do not.

Third, the majority unquestionably misspeaks by adopting its own uniquely narrow definition of the critical statutory term "contribution." As § 113(f)(1) does not define the term "contribution," we must abide by the well-established maxim of interpretation that legal terms not defined in a statute are ordinarily presumed to convey their customary legal meaning and accord the term "contribution" its full common-law meaning: "[W]here Congress borrows terms of art . . . it presumably knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from

---

[18]<u>See</u> 42 U.S.C. § 9613(f)(1).

[19]<u>See</u> 42 U.S.C. § 9613(f)(1) (emphasis added).

-23-

which it was taken[.]"[20]  This tenet of statutory construction is especially important when, as here,

Congress legislates in an area formerly governed by federal common law.  As we have explained,

> Section 107 was the sole statutory basis for recovery of response costs in the original CERCLA statute, which contained no provision for apportioning costs among PRPs. Cases under the original statute threatened minor polluters with joint and several liability, which prompted courts to find an implicit, federal common law right to contribution.  The SARA amendments, including section 113, codified the federal common law right of contribution.  A principal objective of the new contribution provision was to "clarif[y] and confirm[] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances."[21]

We are constrained to "take it as a given that Congress has legislated with an expectation that the

[common-law] principle will apply except when a statutory purpose to the contrary is evident."[22]

The term "contribution," as this court has explained, "is best understood in its customary

sense as a term of art referring to actions brought among potentially responsible parties."[23]  Black's

Law Dictionary defines "contribution" as the "[r]ight of one who has discharged a common liability

to recover of another also liable, the aliquot portion which he ought to pay or bear."[24]  Similarly, the

---

[20]Morisette v. United States, 342 U.S. 246, 263 (1952).

[21]OHM Remediation Services v. Evans Cooperage Co., 116 F.3d 1574, 1581 (5th Cir. 1997) (Garza, J.) (internal citations omitted) (quoting S. Rep. No. 99-11, at 44 (1985) ("[Section 113] clarifies and confirms the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances.").

[22]United States v. Texas, 507 U.S. 529, 534 (1993) (internal quotation marks and citation omitted).

[23]OHM, 116 F.3d at 1582 (emphasis added).

[24]Black's Law Dictionary at 328 (emphasis added).

Restatement (Second) of Torts provides, "when two or more persons become liable in tort to the same person for the same harm, there is a right of contribution among them, <u>even though judgment has not been recovered against all or any of them</u>"[25] and even "without . . . suit against [them]."[26] American Jurisprudence Second elaborates:

> The equity for contribution arises at the time of the creation of the relationship between the parties which gives rise to the right and ripens into a cause of action for reimbursement in favor of a party when, under a legal duty, he satisfies, by payment or otherwise, more than his just proportion of the common obligation or liability. Or, stated in terms applicable to actions at law, the implied promise to contribute is considered as made at the time the common liability is assumed, <u>and the right to sue thereon arises when a party has paid the whole of the obligation or more than his share thereof.</u>[27]

None of these authorities requires, as a condition precedent, that a party be sued or adjudged liable before seeking contribution; rather, the right to seek contribution arises independently when one tort-feasor, acting under a legal duty, discharges more than his fair share of a liability shared by joint tort-feasors.

I acknowledge that some jurisdictions have statutorily restricted the right to seek contribution to actions between tort-feasors against whom judgment has been rendered.[28] Eschewing any such limitation, however, the "during or following" language in § 113(f)(1) confirms that a PRP need not wait until it is hit with a final judgment in a court of law to seek contribution from other PRPs for

---

[25]Restatement (Second) of Torts § 886A (2d ed. 1979) (emphasis added).

[26]<u>Id.</u> at § 886A cmt. b.

[27]<u>See</u> 18 Am. Jur. 2d <u>Contribution</u> § 9 (1985) (emphasis added) (footnotes omitted).

[28]<u>See</u> W. Page Keeton Et Al., <u>Prosser and Keeton on the Law of Torts</u> § 30, at 338 (5th ed. 1984) (collecting cases).

CERCLA liability. Far from restricting the right to seek contribution, the "during or following" language embraces the more expansive Restatement view that a tort-feasor may seek contribution from joint tort-feasors "even though judgment has not been recovered against all or any of them."[29]

One might argue, as does the majority, that by expressly providing for contribution "during or following" a civil action under § 106 or § 107(a), Congress impliedly excluded the common-law right to seek contribution in the absence of suit. Obviously mindful of the possibility of such an overly restrictive reading, Congress took explicit care to add the savings clause, thereby foreclosing this narrow construction of the statute: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§ 106] of this title or [§ 107(a)] of this title."[30]

Unlike the majority, I read the savings clause to mean precisely what it says: Nothing in § 113(f)(1) —— particularly not its "during or following" language —— diminishes the right of any person to bring an action for contribution in the absence of a civil action under § 106 or § 107(a). Just as the "during or following language" confirms that the class of those who have the "right . . . to bring an action for contribution" is not limited to PRPs against whom a judgment already has been rendered, the savings clause clarifies that a PRP may seek contribution in the absence of suit so long as the prerequisites for a contribution claim have otherwise been met.

Rather than deal squarely with this argument, the majority opts to mischaracterize it. My argument is neither that Congress "deliberately" made the enabling provision "unclear," nor that it

---

[29]See Restatement (Second) of Torts at § 886A.

[30]See 42 U.S.C. § 9613(f)(1) (emphasis added).

intended the savings clause to "clarify" any such ambiguity. To the contrary, my argument tracks Congress's own stated intentions of "clarif[ying] and confirm[ing]" the federal common-law right to seek contribution from other potentially liable parties under CERCLA. Thus I maintain that the "during or following" language itself clarifies, in the face of contrary authority, that a party need not wait until judgment is rendered to seek contribution under § 113(f)(1).

The savings clause, then, serves as a prior restraint to rebut any unintended inference of expressio unius lest some court in the future try to ascribe that maxim to the language. Stated differently, the savings clause rules out any construction that would purport to read "during or following" as the exclusive portal through which a contribution claim must pass. Particularly in the absence of the word "only" preceding the phrase "during or following," the savings clause makes abundantly clear that "during or following" are but two of the many times and circumstances when one PRP may seek contribution from another.

The majority's reliance on Resolution Trust Corp. v. Miramon[31] is thus misplaced. The statute at issue in that case abrogated a federal common-law provision, whereas in our case, section § 113(f)(1) "confirms" the federal common law of contribution under CERCLA. Furthermore, the savings clause at issue in Miramon expressly stated that "[n]othing in this paragraph shall impair or affect any right of the [Resolution Trust] Corporation under other applicable law."[32] Focusing on the term "other," we concluded that the savings clause did not preserve federal common law actions for simple negligence when the enabling provision of the statute solely referenced actions for gross negligence:

---

[31]22 F.3d 1357 (5th Cir. 1994).

[32]See 12 U.S.C. § 1821(k) (emphasis added).

-27-

The savings clause provides that the RTC's rights under <u>other</u> applicable law will not be impaired or affected. This clearly implies that the RTC's rights under <u>some</u> law is being impaired or affected. Under the RTC's construction of the savings clause, though, there is no law that is impaired or affected because all previous common law remains effective and [the statute] merely grants the RTC an additional option. Had Congress intended this result it would have drafted the clause to read that "[n]othing in this paragraph shall impair or affect any right of the Corporation under any applicable law.[33]

The language of § 113(f)(1)'s savings clause, however, is even more expansive and explicit in preserving the PRP's common-law right to bring an action for contribution in the absence of suit: "Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under [§ 106] of this title or [§ 107(a)] of this title."[34] Unlike the statute at issue in <u>Miramon</u>, section 113(f)(1) contains no language even remotely suggesting that the "during or following" language is meant to be exclusive or restrictive. Neither is there anything that expressly or implicitly limits the savings clause to <u>state</u> "actions." In view of Congress's express intention to "confirm" the federal common law of contribution under CERCLA, I must disagree with the majority when it insists that we should read into § 113(f)(1) a limitation on the right to seek contribution that a straightforward reading of the plain language of the statute expressly rejects.

II.

Legislative History

The majority's resort to legislative history to shore up its problematical reading of the statute aptly demonstrates the pitfalls of traversing such uncertain terrain, especially when —— as here —— there is no claim or finding of ambiguity. In support of its bald assertion that the legislative history

---

[33]<u>Miramon</u>, 22 F.3d at 1361 n.6.

[34]<u>See</u> 42 U.S.C. § 9613(f)(1).

-28-

"overwhelmingly supports" its reading of the statute, the majority fecklessly relies on House and Senate reports that address markedly different, and ultimately abandoned, versions of what would later become the enacted version of § 113(f)(1). The subsequently abandoned version under consideration by the Senate at that time provided that "[a]fter judgment in any civil action under section 106 or [§ 107(a)], any defendant held liable or potentially liable in the action may bring a separate action for contribution against any other person liable or potentially liable under [§ 107(a)]."[35] Similarly, the subsequently abandoned version under consideration by the House at that time provided that "any defendant alleged or held to be liable in an action under section 106 or section 107 may bring an action for contribution or indemnity against any other person liable to [sic] potentially liable."[36] If, despite the absence of ambiguity in the statute, the majority would invoke legislative history (generally perceived to be a sign of weakness in a proposed reading of a statute), it should at least limit its reliance to that part of the history that addresses the version of the legislation that Congress actually adopted into law.

By any standard, the language of the statute ultimately enacted by Congress is more permissive than either of the more restrictive versions on which the legislative history cited by the majority comments. The legislative history does not reveal reasons for these changes, and I hesitate to place too much weight on what may be a slim reed. At a minimum, though, it can hardly be said —— at least not without blushing —— that the legislative history supports the majority's contention

---

[35]S. Rep. No. 99-11, at 103 (1985) (emphasis added). The savings clause read as follows: "Except as provided in paragraph (4) of the subsection, this subsection shall not impair any right of indemnity under existing law." Id.

[36]H.R. Rep. No. 99-253, pt. 1, at 188 (1985), reprinted in 1986 U.S.C.C.A.N. 2835, 2862 (emphasis added).

that "Congress . . . made it clear in passing SARA that it intended only a <u>limited</u> federal right of contribution."

The majority would also make much of the fact that the legislative history "never mentions that SARA intended to allow contribution in the absence of either a pending or prior § 106 or § 107(a) action." I am mystified by the majority's willingness to cast aside its healthy skepticism about legislative history to read so much into the <u>absence</u> of legislative discussion on this issue, especially when the plain language of the statute, through its savings clause, <u>expressly</u> contemplates actions for contribution in the absence of civil actions under § 106 or § 107(a). Surely the majority has not forgotten Justice Scalia's admonition that we are not concerned with what Congress <u>intended</u>, but what it <u>enacted</u>: "[I]t is ultimately the provisions of our laws rather than the principal concerns of our legislators by which we are governed."[37]

The one thing —— perhaps the only thing —— that is clear from the legislative history is that § 113(f)(1) "clarifies and confirms" the federal common-law right to seek contribution from other potentially liable parties under CERCLA.[38] Taken together, (1) Congress's intentional omission of "only" before "during or following," and of "state" before "action in the savings clause, (2) the expansive common-law understanding of the term "contribution" to include actions instituted prior to suit or

---

[37]<u>Oncale v. Sundowner Offshore Services, Inc.</u>, 523 U.S. 75, 79 (1998).

[38]S. Rep. No. 99-11, at 44 (1985).

judgment, (3) the necessity of the "during or following" language as an express re-affirmation of the right to seek contribution before judgment, and (4) the broad language of the savings clause, convince me that the plain and unambiguous language of the statute enacted by Congress does permit a PRP, such as Aviall, to seek contribution in the absence of a civil action under § 106 or § 107(a) as well as during or following such an action.

III.

Case Law

The majority admits, as it must, that in a "string of cases," federal courts of appeal (including this one) have permitted § 113(f)(1) contribution suits to go forward in the absence of civil actions under § 106 or § 107(a).[39]   Most recently, in <u>Crofton Ventures LP v. G & H Partnership</u>,[40] the Fourth Circuit, in an opinion authored by Judge Niemeyer, allowed a § 113 suit by a PRP who, just like Aviall, had notified a state environmental agency of the contamination and then cleaned up the facility.  It was of no moment in <u>Crofton</u> that neither an administrative charge nor a § 106 or § 107 action had been brought against the plaintiff in that case.

---

[39]<u>See</u>, <u>e.g.</u>, <u>Amoco Oil v. Borden, Inc.</u>, 889 F.2d 664 (5th Cir. 1989) (permitting contribution claim under § 113(f)(1) to proceed in the absence of a civil action under § 106 or § 107(a)); <u>PMC, Inc. v. Sherwin-Williams Co.</u>, 151 F.3d 610 (7th Cir. 1998); <u>Centerior Service Co. v. Acme Scrap Iron & Metal Corp.</u>, 153 F.3d 344 (6th Cir. 1998); <u>Sun Company, Inc., v. Browning-Ferris, Inc.</u>, 124 F.3d 1187 (10th Cir. 1997).

[40]No. 00-1517, 2001 WL 829885 ( 4th Cir. July 24, 2001).

True enough, whether a party may seek contribution under §
113(f)(1) in the absence of a CERCLA action against it was not a
contested issue in any of these cases.  But albeit tacit, that
phenomenon only underscores the common understanding among courts
and litigants alike that the plain language of § 113(f)(1) does not
require a PRP to wait until it is haled into court to seek
contribution under the statute.

Faced with this line of federal appellate cases, what does the
majority choose to rely on but a district court case —— from
another circuit —— Estes v. Scotsman Group, Inc.,[41] which in turn
relied on dicta from the Seventh Circuit's opinion in Rumpke of
Indiana, Inc. v. Cummins Engine Co, Inc.:[42]

> We acknowledge, as other courts have, that this seems to
> provide a disincentive for parties voluntarily to
> undertake cleanup operations, because a § 106 or § 107(a)
> action apparently must either be ongoing or already
> completed before § 113(f)(1) is available.  This appears
> to be what the statute requires, however.[43]

In Ninth Ave. Remedial Group v. Allis Chalmers Corp.,[44] however, a
different district court in the same circuit refused to "be guided
by the equivocal dicta in Rumpke" and held that "[i]n light of the
express language of Section 113(f)(1) . . . [a] PRP can bring a
section 113 action even when no prior or pending section 106 or 107

_____

[41]16 F. Supp.2d 983 (C.D. Ill. 1998).

[42]107 F.3d 1235 (7th Cir. 1997).

[43]Id. at 1241.

[44]974 F. Supp. 684 (N.D. Ind. 1997).

-32-

civil actions have occurred."[45]

Similarly, in <u>Mathis v. Velsicol Chemical Corp.</u>,[46] a district court in the Eleventh Circuit rejected an attempt to plead, as an affirmative defense to a § 113(f)(1) claim, that "no civil action under [§ 106] or [107(a)] is pending."[47]  Underscoring the broad language of the savings clause, the <u>Mathis</u> court held that § 113(f)(1) "by its plain terms and meaning prevents . . . [the maintenance of] a defense concerning the pendency of a civil action under CERCLA."[48]  Likewise, in <u>Johnson County Airport Comm'n v. Parsonitt Co., Inc</u>,[49] the district court held that "nothing in the language of section 113(f)" prohibits a PRP from asserting claims for contribution under the statute in the absence of a civil action under § 106 or § 107(a).[50]  Most recently, in <u>Coastline Terminals of Connecticut, Inc. v. USX Corp.</u>,[51] the district court held that a § 113(f)(1) claim is not barred merely because the PRP has not been threatened with liability in the form of a § 106 or § 107

---

[45]<u>See</u> <u>id.</u> at 691.

[46]786 F. Supp. 971 (N.D. Ga. 1991).

[47]<u>Id.</u> at 975.  The plaintiffs' state-law claims alleged nuisance and trespass to land.

[48]<u>Id.</u>

[49]916 F. Supp. 1090 (D. Kan. 1996).

[50]<u>See</u> <u>id.</u> at 1095.

[51]No. 3:00CV1698(WWE), 2001 WL 844722 (D. Conn. June 12, 2001).

action.[52]  The majority begrudgingly acknowledges these cases but makes little effort to contend with their reasoning and analysis.

Instead, the majority cobbles together a hodgepodge of other district court cases, none of which is apposite.  For example, the district court in Deby, Inc. v. Cooper Indus.[53] dismissed the PRP's contribution claim as "premature and improper" because the PRP had "yet to be found liable" in a CERCLA action then actually pending against the PRP in another district court.  The Deby court therefore concluded that "[i]t would run contrary to judicial economy, efficiency, and consistency to have t[w]o courts determine Deby's liability."[54]

The majority likewise cites the district court opinion in United States v. Compaction Sys. Corp.[55] for support, but that case merely held that the act of settling with the United States satisfies § 113(f)(1)'s liability requirement even though there has been no formal admission of liability.[56]  In the same vein, the majority cites to the district court's opinion in Southdown v. Allen[57] even though it has no applicability whatsoever to the

_____

[52]See id. at *3.

[53]No. 99C2464, 2000 WL 263985 (N.D. Ill. Feb. 29, 2000).

[54]See id. at *5.

[55]88 F. Supp.2d 339 (D.N.J. 1999).

[56]See id. at 351.

[57]119 F. Supp.2d 1223 (N.D. Ala. 2000).

-34-

instant case. In <u>Southdown</u>, the defendants argued that the plaintiff had abrogated the right to seek cost recovery or contribution under CERCLA through <u>contract</u>; discussion in that case appropriately centered on the defendants' argument that the plaintiff's cleanup costs had been incurred "voluntarily" pursuant to a contractual agreement between the parties and were therefore unrecoverable under § 113(f)(1).[58] In short, none of these district court cases from other circuits either supports the majority or offers any help in resolving the issue of first impression presented here: whether, in the absence of a civil action under § 106 or § 107(a), the statute permits a PRP who has incurred cleanup costs pursuant to a state administrative order to bring a § 113(f)(1) contribution action in federal court.

I recognize that the district court in <u>Rockwell Intern. Corp. v. IU Intern. Corp.</u>[59] rejected my view that § 113(f)(1) permits claims for contribution in the absence of a federal civil action under § 106 or § 107(a); <u>but</u> it also rejected the majority's view that the "during or following" language "precludes any claim sounding in contribution except when brought by a party defending against or found liable in a [§ 106] or [§ 107(a)] action."[60] In <u>Rockwell</u>, the plaintiff sought a declaratory judgment under §

---

[58]<u>Id.</u> at 1245.

[59]702 F. Supp. 1384 (N.D. Ill. 1988).

[60]<u>See id.</u> at 1389.

113(f)(1) in the event that it was later held liable for "whatever costs it may incur in the future as a result of the actual or threatened release of hazardous substances[.]"[61] The district court in Illinois permitted the plaintiff's § 113(f)(1) declaratory judgment action to proceed on the theory that the "during or following" language does not limit the right to seek contribution but merely "recogni[zes] that the actual payment of damages cannot occur until [the plaintiff is found liable]."[62] Rockwell, then, does not answer, one way or the other, the core question of this appeal: whether a party that has already incurred cleanup costs and conceded to being a PRP can seek contribution from another putative PRP under § 113(f)(1) in the absence of an ongoing or adjudged § 106 or § 107(a) action against it.

The majority finally turns to this court's own precedent and strains mightily to glean from it an "intimat[ion] that a § 106 or § 107(a) action must be pending or adjudicated for a party to pursue contribution costs" from dicta in our OHM opinion.[63] Reminiscent of the Emperor's new clothes, however, that opinion suggests no such thing. Directly to the contrary, in fact, what we actually observed in OHM is that § 113(f)(1) "allows parties to bring contribution actions at least as soon as they are sued under

---

[61]Id. at 1386.

[62]Id. at 1389.

[63]See OHM, 116 F.3d 1574.

CERCLA."[64]  Thus <u>OHM</u> recognized the distinct possibility — not before us in that case — that contribution could be sought even earlier than the day on which a § 113(f)(1) action is filed. Try as I might, I simply cannot see how the majority can read the phrase "at least as soon as" to indicate anything other than a recognition of the distinct possibility that a § 113(f)(1) action might be brought even earlier than the filing of a civil action under § 106 or § 107(a).

Neither does our discussion of the common-law principle of contribution in <u>OHM</u> "imply" that a party must be alleged or held to be liable before it may seek contribution under § 113(f)(1). In <u>OHM</u>, we observed that the term "contribution" refers to "an action by a [PRP] to recover from another [PRP] that portion of its costs that are in excess of its pro rata share of the aggregate response costs[.]"[65]  This definition comports with the authoritative view that the right to sue for contribution "arises when a party has paid the whole of the obligation or more than his share thereof[.]"[66]

Contrary to the majority's contentions, the definition of

---

[64]<u>See</u> <u>id.</u> at 1582 (emphasis added).

[65]<u>Id.</u> (internal quotation marks and citation omitted)

[66]<u>See</u> 18 Am. Jur. 2d <u>Contribution</u> at § 9.  <u>See</u> <u>also</u> <u>McLochlin v. Miller</u>, 139 Ind. App. 443, 217 N.E.2d 50, 53 (1966) ("It is true that payment must be made under compulsion to entitle payor to contribution.  But such pressure exists sufficiently to establish the right to contribution whenever there is a legal obligation to pay.  The claimant is not obliged to wait until suit is brought to claim compulsion.").

"contribution" adopted by <u>OHM</u> and set forth in Black's Law Dictionary —— the "[r]ight of one who has discharged a common liability to recover of another also liable, the aliquot portion which he ought to pay or bear"[67] —— does not require that a party either be <u>alleged</u> to be or <u>held</u> to be liable before it may seek contribution; only that it in fact <u>be</u> liable, <u>i.e.</u>, "bound or obliged in law or equity."[68]  The majority only compounds its error by misconstruing the example of "contribution" provided by Black's Law Dictionary  —— "Under [the] principle of 'contribution,' a tort-feasor <u>against whom a judgment is rendered</u> is entitled to recover proportional shares of judgment from other tort-feasors"[69] —— as an exclusive, rather than merely illustrative, application of the principle.

In short, the majority's claim of widespread jurisprudential support for its textual analysis vanishes like the mist when exposed to the sunshine of objective scrutiny.  If one robin does not make a spring, then surely a light dusting of equivocal district court cases and a wisp of dicta from another circuit does not persuasive authority make.  The paucity of case law —— particularly federal appellate case law —— directly on point mandates a holding that the plain language of § 113(f)(1) expressly

---

[67]Black's Law Dictionary at 328.

[68]<u>See</u> <u>id.</u> at 915.

[69]<u>Id.</u> (emphasis added).

permits an action for contribution to be brought "in the absence of a civil action" under § 106 or § 107(a).

## IV.

## Policy

The majority mouths adherence to the prudential rule that when the meaning of statutory language is clear, courts "need not determine which way . . . various policy arguments cut."[70] Nevertheless, the same majority goes on to claim, astonishingly, that its interpretation of the statute furthers rather than frustrates the policy goals of CERCLA that this court has identified as "facilitat[ing] the prompt cleanup of hazardous waste sites and . . . shift[ing] the cost of environmental response from the taxpayers to the parties who benefitted from the wastes that caused the harm."[71] The majority weakly contends that it "seems unlikely that Congress enacted a contribution right broad enough to encompass . . . the situation[] where neither the federal government nor any private party has filed a CERCLA action . . . and the EPA has not designated [the facilities] as contaminated sites." But such "logic" is exposed as flawed by the undeniable recognition that the overarching goal of CERCLA is to create strong incentives for responsible parties to perform cleanups of sites without waiting for the hammer of litigation to drop. In my view,

---

[70]See Buckhannon Board and Care Home, Inc. v. West Virginia Dept. of Health and Human Resources, 532 U.S. ___ , 121 S. Ct. 1835, 1843 (2001).

[71]See OHM, 116 F.3d at 1578 (emphasis added).

the majority's decision runs directly counter to CERCLA's goal of prompt cleanups. In reality, it <u>encourages</u> PRPs to postpone, defer, or delay remediation and to "lie behind the log" until forced to incur cleanup costs by governmental order, either administrative or court.

Irrespective of the policy arguments, though, if the text of § 113(f)(1), legitimately read, limited the right to seek contribution to those PRPs against which pending or adjudged § 106 or § 107(a) actions were extant, I would be the first to acknowledge and enforce that limitation. As I am convinced, however, that the plain language of the statute creates no such limitation but, to the contrary, expressly permits an action for contribution to be brought "in the absence of a civil action" under § 106 or § 107(a), I must respectfully dissent.