**REVISED**

United States Court of Appeals,

Fifth Circuit.

No. 96-30714.

OHM REMEDIATION SERVICES, Plaintiff-Counter Defendant-Cross Defendant-Appellant,

v.

EVANS COOPERAGE CO., INC., Defendant-Third Party Plaintiff-Counter Claimant-Cross Defendant Counter Defendant-Appellee,

Louisiana Oil Recycle/Reuse, Inc.; Coastal Leasing Services, Inc.; Henrietta McCrary; Francis' Drilling Fluid, Inc.; Power Tool Repair Service, Inc.; American Inspection and Testing Laboratories, Inc.; American Manufacturing Company, Inc.; Atlas Processing Co.; Aviation Laboratories Inc.; Boassa International Inc.; Cabot Corporation; Caleb Brett USA; Castrol Inc.; Catalyst Recovery of Louisiana Inc.; Cherry Picker Parts & Service Company, Inc.; Cheyenne Services, Inc.; Conoco Inc.; Daniel Oil Tools Co.; De Nova Oil and Gas, Drilling Measurements Inc.; Dravo Lime Company; Dresser Industries Inc.; Dwaca Enterprises; Ebasco Services, Inc.; Fruehauf Trailer Corporation; Howell Industries; Iew Systems Inc.; Independent Tank Cleaning Services Inc.; Ingersoll Rand Co.; Koch Service Inc.; KRC Southern Inc.; L & B Transportation; Louisiana Bulk Carriers Inc.; Matlack Inc.; Quality Diesel Service Inc.; Richard Oil Co.; Rubicon Incorporated; Sabine Manufacturing; Saybolt Inc.; Schuylkill Metals; Southern Natural Gas Company; Stupp Brothers Bridge and Iron Company; Tube Alloy Corp.; Valley Electric Membership Corporation; Verret Shipyard Inc.; Westlake Polymers Corp., Third Party Defendants-Cross Defendants-Appellees,

Atlas Wireline; Dresser Pump; Geismar Marine Inc.; Greenville Johnny of Louisiana Inc.; Intercoastal Truck; LA Interstate Liquids Inc.; N L McCullough Industries; Novi Chemical; Southern Pipe; Southern Scrap Metals Inc., Appellees,

Acadian Ambulance Service Inc., Third Party Defendant-Cross Defendant-Third Party Plaintiff-Cross Claimant-Counter Claimant-Counter Defendant-Appellee,

T T Barge Cleaning Inc., Third Party Defendant-Cross Defendant-Third Party Plaintiff-Cross Claimant-Counter Claimant-Appellee,

1

Florida Parishes Voc-Tech School, Third Party Defendant-Cross Claimant-Counter Claimant-Cross Defendant-Appellee,

CCL Custom Manufacturing Inc.; Cedar Chemical Corp.; BP Exploration and Oil Inc.; Constar Plastics Inc.; DSI Transports Inc.; International Paper Company; Louisiana Industries; Occidental Chemical Corporation; Oxy USA Inc.; Port Allen River Plant Inc., Third Party Defendants-Counter Claimants-Cross Defendants-Appellees,

Coastal Fluid Technologies Inc.; Deep South Chemical; MacKenzie Corporation, Third Party Defendants-Appellees,

Koch Service Inc., Third Party Defendant-Cross Claimant-Appellee,

July 22, 1997.

Appeals from the United States District Court for the Middle District of Louisiana.

Before EMILIO M. GARZA, PARKER and DENNIS, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

OHM Remediation Services appeals the district court's dismissal of its action to recover response costs under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 and 9613. In a case posing two issues of first impression in the federal courts of appeal regarding the response cost recovery and contribution provisions of CERCLA, we reverse and remand.

I

The relevant facts here are not in dispute. Louisiana Oil Recycle and Reuse ("Louisiana Oil") operated a facility in Baton Rouge that recycled nonhazardous waste. In a critical two-year period, Evans Cooperage sent at least seventy-six shipments of waste materials, the total volume of which exceeded 450,000

2

gallons, to Louisiana Oil for treatment or disposal. At some point after these shipments, a hazardous substance began escaping from the Louisiana Oil facility, flooding the grounds of adjacent property and spilling into the Baton Rouge storm sewer system. The Louisiana Department of Environmental Quality ("DEQ") ordered Louisiana Oil to take immediate action. Louisiana Oil contacted OHM the same day, and over the next three months OHM contained the release and recovered the spilled materials. According to the DEQ, OHM's work successfully abated the emergency situation at the facility and left the site in a secure condition. At no point was OHM's relationship with Louisiana Oil anything other than contractual; OHM has never had any ownership or leasehold interest in the Louisiana Oil facility.

The DEQ shut Louisiana Oil down after issuing an order finding that the materials spilled were "hazardous waste, namely hazardous washwater which failed the characteristic test for corrosivity and for chromium and lead." After it was shut down, Louisiana Oil went out of business, and its insurance did not cover OHM's $3 million bill for response costs. As Louisiana Oil was unable to pay for its services, OHM sued Evans for recovery of clean-up costs under CERCLA section 107(a), 42 U.S.C. § 9607(a). Evans named several potentially responsible parties ("PRPs") as third-party defendants, and two of these companies named numerous other parties as third-party defendants. Based on documents obtained from Louisiana Oil, the total number of third-party co-defendants eventually

3

reached seventy, including OHM, which had delivered ten drums of waste to Louisiana Oil in 1991.  Although OHM did not admit that the material it sent to Louisiana Oil was hazardous, nor that the ten drums made OHM a potentially responsible party under the statute, the company brought a contribution action against the third-party defendants under CERCLA section 113(f), 42 U.S.C. § 9613(f).

Evans filed a motion to dismiss under Fed.R.Civ.P. 12(b)(6), part of which the district court converted to a motion for summary judgment and granted.  The court dismissed OHM's section 107(a) claims on summary judgment, holding that the language of the statute implies that one must have a "protectable interest" in the clean-up site to recover response costs.  Because OHM had no such interest in the Louisiana Oil site, the district court held that OHM could not bring an action under section 107(a).  The district court also granted the Evans's motion to dismiss OHM's section 113(f) claims, holding:  (1) that OHM could not maintain a section 113(f) contribution action because it had not shown that the defendants were "liable or potentially liable" in its original section 107(a) claim, and (2) that, in any event, OHM could not bring a contribution claim unless the company admitted that it was jointly and severally liable as a potentially responsible party. OHM appealed.

## II

Congress enacted CERCLA in 1980, and amended it in 1986 by

4

the Superfund Amendments and Reauthorization Act ("SARA"). CERCLA's broad, remedial purpose is to facilitate the prompt cleanup of hazardous waste sites and to shift the cost of environmental response from the taxpayers to the parties who benefitted from the wastes that caused the harm. *Matter of Bell Petroleum Services, Inc.,* 3 F.3d 889, 894 (5th Cir.1993) (citing *United States v. R.W. Meyer, Inc.,* 889 F.2d 1497, 1500 (6th Cir.1989), *cert. denied,* 494 U.S. 1057, 110 S.Ct. 1527, 108 L.Ed.2d 767 (1990)). CERCLA section 107(a) provides for the recovery of response costs from all persons responsible for the release of a hazardous substance. Response actions include both "remedial" and "removal" actions. *Bell Petroleum,* 3 F.3d at 894. Removal actions generally are immediate or interim responses, and remedial actions generally are permanent responses. *Id.* These response actions may be undertaken by the United States, any state, an Indian tribe, or "any other person" under section 107(a)(4)(A)-(B).

CERCLA makes four classes of "covered persons" liable for response costs: (1) present owners and operators of facilities that accepted hazardous substances, (2) past owners and operators of such facilities, (3) generators of hazardous substances, and (4) certain transporters of hazardous substances. CERCLA § 107(a). The Act's broad reach extends liability all the way down the causal chain, from those who generate waste through those who dispose of it. *See, e.g., B.F. Goodrich Co. v. Murtha,* 958 F.2d 1192, 1198

(2d Cir.1992). Because the Act imposes strict liability, *Bell Petroleum,* 3 F.3d at 897, plaintiffs generally need not prove causation, only that the defendant is a "covered person." *United States v. Alcan Aluminum Corp.,* 990 F.2d 711, 721 (2d Cir.1993). Where the harm is indivisible, liability under the Act is joint and several. *Bell Petroleum,* 3 F.3d at 903. Responsible parties are liable for a broad range of expenses, including all costs of removal of substances consistent with the National Contingency Plan ("NCP"), damages for injury to natural resources, the cost of health assessments, and all other necessary response costs. CERCLA § 107(a)(4).

The NCP, a set of guidelines drafted by the Environmental Protection Agency, governs site cleanup and response actions under CERCLA. 40 C.F.R. Part 300. The NCP sets performance standards, identifies methods for investigating the environmental impact of a release or threatened release, and establishes criteria for determining the appropriate extent of response activities. *Bell Petroleum,* 3 F.3d at 894.

In addition to the cost recovery provisions of section 107(a), CERCLA section 113(f) provides for contribution from "any other person who is liable or potentially liable under section [107(a)]." Section 113(f) allows courts to "allocate response costs among liable parties using such factors as the court determines are appropriate." CERCLA § 113(f)(1).

6

III

A

First, we address whether recovery of response costs under section 107(a) is restricted to persons with a "protectable interest" in the cleanup site. The district court dismissed OHM's section 107 claim on a motion for summary judgment, holding that, in order to satisfy the "statutory causation" requirement of the statute, the claimants must have a "protectable interest" in the property. We review a district court's grant of summary judgment *de novo. Doddy v. Oxy USA, Inc.,* 101 F.3d 448, 460 (5th Cir.1996). In doing so, we employ the same criteria as the district court and construe all facts and inferences in the light most favorable to the nonmoving party. *Id.* Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). This appeal involves no question of fact, only a question of law.

The relevant part of section 107(a), including the causation requirement, provides that any "covered person" with respect to a facility or site:

> from which there is a release, or a threatened release which *causes* the incurrence of response costs, of a hazardous substance, shall be liable for—
>
>> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;

7

> (B) any other necessary costs of response incurred by *any other person* consistent with the national contingency plan; ...

CERCLA § 107(a)(4) (emphasis added). The district court determined that the word "causes" implies a requirement of connection between the plaintiff and the property satisfied only by an interest in the site. It held that the spill only "caused" response costs for Louisiana Oil, but did not cause the actions or costs of Louisiana Oil's contractors. According to this interpretation of section 107(a), OHM would presumably have a cause of action sounding in contract against Louisiana Oil, who in turn could recover from potentially liable parties ("PRPs") under CERCLA. Such a reading of CERCLA would effectively bar independent contractors such as OHM from recovering response costs under section 107(a).

This protectable interest requirement is nowhere in the statute, and we decline to insert it. The text of section 107 does not limit the class of plaintiffs who may recover response costs; the only descriptions of who may recover are "the United States Government or a State or an Indian tribe" in section 107(a)(4)(A) and "any other person" in section 107(a)(4)(B). Far from a limitation, the combination of these two clauses in section 107 evidences congressional intent that anyone is eligible to recover response costs. In addition, we have been unable to find any legislative history in CERCLA or the SARA amendments suggesting that Congress ever intended such a "protectable interest" inquiry.

To read the word "causes" to include a requirement of a protectable interest confounds even a commonsense reading of section 107. The word "causes" in section 107(a)(4) applies to costs incurred by the government under 107(a)(4)(A) and by individuals under 107(a)(4)(B), so under the district court's reading, the causation requirement would constrain the government as well. Congress surely did not require the government to have a protectable interest in any Superfund site for which it incurs response costs, and it makes little sense to infer that requirement for private parties. We have never required a showing of such an interest as an element of section 107 recovery actions. In *Bell Petroleum,* for example, we held that the Environmental Protection Agency could recover the costs it incurred removing chromium from the Trinity Aquifer near Odessa, Texas. 3 F.3d at 907-09. Neither the EPA nor the United States has a "protectable interest" in the aquifer, and we did not require one. To the contrary, we have held that "a plaintiff who has incurred response costs meets the liability requirement *as a matter of law* if it is shown that any release violates, or any threatened release is likely to violate, any applicable state or federal standard, including the most stringent." *Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 671 (5th Cir.1989) (emphasis added).

Evans argues that the spill did not "cause" OHM's response, but that a contract with Louisiana Oil caused OHM's response costs.

9

This is essentially a request that the court graft a rule of privity onto CERCLA, allowing only the property owner to recover under the statute. However, the statute does not adopt such a cramped view of causation. In the case at hand, if no release had occurred, OHM would not have had to incur response costs cleaning up the site. In that respect, the spill "caused" OHM's response costs. The statute does not require OHM to show that it has any more substantial relationship to the property than it does in this case.

In short, section 107(a) does not impose a "protectable interest" limitation on who may recover response costs, and such a limitation is not fairly implied by the text of the statute, by the legislative history, or by reading the statute as a whole. In light of the clear intention of Congress to provide a private right of action to "any other person" for recovery of response costs, we decline to exclude by implication those without a protectable interest in the cleanup site. No other court of appeals has curtailed CERCLA recovery in this way, and we decline to do so today.

B

Next, we address whether section 113(f) contribution actions may be brought by a party that is not liable or potentially liable. After dismissing OHM's section 107(a) claim against Evans, the district court dismissed OHM's section 113(f) contribution claim against the third-party defendants on two independent grounds.

First, the court noted that section 113(f) allows actions against third parties only after an initial determination of liability under section 107(a). Section 113(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section [107(a) ] of this title, during or following any civil action under section 9606 of this title or under section [107(a) ] of this title." A section 113(f) contribution action is derivative of an action under section 107(a), if only a pending one. Accordingly, the district court's dismissal of OHM's section 107(a) action served to void the statutory prerequisite to suit under section 113(f). However, in the prior section of this opinion, we reversed the district court's dismissal and remanded OHM's section 107(a) claim to the district court for determination. OHM still has a viable section 107(a) claim pending in the district court, and therefore the district court's first rationale for dismissing the company's section 113(f) claims no longer holds.

The district court held, in the alternative, that a section 113(f) claim for contribution may only be brought by a party that is liable or potentially liable under the statute. OHM does not concede that the ten drums of waste it deposited with Louisiana Oil in 1991 were hazardous, nor does it admit that it is potentially responsible for cleanup costs, and the district court has not made any findings of liability. Instead of admitting that it is a PRP, OHM argues that section 113(f) actions may be brought by non-PRP

11

claimants.

1

Section 113(f)(1) reads in relevant part:

> *Any person* may seek contribution from *any other person* who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section [107(a) ] of this title.... In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.

CERCLA § 113(f)(1) (emphasis added). The statute allows that "[a]ny person" may seek contribution, but this must be read in conjunction with the statute's description of who is liable: "any *other* person." "Other" in this section refers back to the person seeking contribution, and changes our understanding of who might fill that role.

The ambiguity in section 113(f) rides on the proper interpretation of the word "other." If, as OHM suggests, we read "other" to modify only the single word following it, "person," the word does nothing more than prevent the plaintiff from suing himself for contribution. Such a reading would effectively mean, "Any person may seek contribution from any other person in the world, so long as the person from whom contribution is sought is liable or potentially liable...." Under such a reading, section 113(f) would essentially parrot section 107(a), allowing anyone to recover response costs from a PRP. However, if one reads the word "other" to modify "person who is liable or potentially liable," as

12

the district court did in this case, the phrase implies that the person *seeking* contribution must be liable also. Such a reading construes the statute to say, "Any person who is liable or potentially liable may seek contribution from any *other* person who is liable or potentially liable...."

The rest of section 113 indicates that contribution actions are appropriate only to settle disputes among PRPs, allowing the court to "allocate response costs *among liable parties* " using equitable factors. Indeed, although we have never held as much, we have suggested in dictum that section 113(f) actions may only be brought among potentially responsible parties: "Under CERCLA, a defendant has contribution rights only against *other defendants* who have not resolved their liability in an administrative or judicially approved settlement." *Bell Petroleum,* 3 F.3d at 902 n. 14; *see also Amoco Oil Co. v. Borden, Inc.,* 889 F.2d 664, 672 (5th Cir.1989) ("When one liable party sues another to recover its equitable share of the response costs, the action is one for contribution....").

The legislative history of CERCLA reinforces the conclusion that only PRPs may bring actions for contribution. Section 107 was the sole statutory basis for recovery of response costs in the original CERCLA statute, which contained no provision for apportioning costs among PRPs. Cases under the original statute threatened minor polluters with joint and several liability, which

13

prompted courts to find an implicit, federal common law right to contribution. *See County Line Inv. Co. v. Tinney,* 933 F.2d 1508, 1515 (10th Cir.1991); *O'Neil v. Picillo,* 883 F.2d 176, 179 (1st Cir.1989), *cert. denied,* 493 U.S. 1071, 110 S.Ct. 1115, 107 L.Ed.2d 1022 (1990); *Mardan Corp. v. C.G.C. Music, Ltd.,* 804 F.2d 1454, 1457 n. 3 (9th Cir.1986). The SARA amendments, including section 113, codified the federal common law right of contribution. *See United Technologies Corp. v. BFI, Inc.,* 33 F.3d 96, 98 (1st Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1176, 130 L.Ed.2d 1128 (1995). A principal objective of the new contribution provision was to "clarif[y] and confirm[ ] the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances." S.Rep. No. 11, 99th Cong., 1st Sess. 44 (1985). The legislative history thus supports the idea that section 113(f) was not meant to be duplicative of section 107(a), but meant instead to allow potentially responsible parties a cause of action to mitigate the harsh effects of joint and several liability.

Few cases have addressed the specific question of whether a non-PRP has a cause of action under section 113(f). In the only case we have found directly on point, *Companies for Fair Allocation v. Axil Corp.,* a district court in Connecticut held that the plain

14

language of the statute said that "[a]ny person" could sue for contribution, so the claimant need not be a PRP: "Although the statute provides that contribution may only be sought *from* parties who are liable or potentially liable, the statute imposes no such liability requirement on parties *seeking* contribution." *Axil,* 853 F.Supp. 575, 581 (D.Conn.1994).

The First Circuit has reached the opposite result, on different procedural footing, in *United Technologies v. BFI,* 33 F.3d 96, 100-02 (1st Cir.1994). In interpreting section 113, the *United Technologies* court employed a canon of statutory construction, that legal terms used in framing a statute are ordinarily presumed to convey their customary legal meaning, to find that section 113(f) is meant to apportion costs among PRPs. *Id.* at 99.[1] We agree that "contribution," as that word is used in CERCLA, is best understood in its customary sense as a term of art referring to actions brought among potentially responsible parties. Black's Law Dictionary defines "contribution" as:

> Right of one who has discharged a common liability to recover of another also liable, the aliquot portion which he ought to pay or bear. Under principle of "contribution," a tort-feasor against whom a judgement is rendered is entitled to recover proportional shares of judgment from other joint tort-feasors whose negligence contributed to the injury and who were also liable to the plaintiff.

---

We express no opinion on the separate question addressed by the *United Technologies* court, whether a PRP may seek to hold other parties jointly and severally liable under section 107(a) for response costs.

15

Black's Law Dictionary 328 (6th ed.1990). The *United Technologies* court concluded that the structure of the statute, including separate limitations periods for section 107 and section 113, indicate that "contribution" in section 113 "refers to an action by a responsible party to recover from another responsible party that portion of its costs that are in excess of its *pro rata* share of the aggregate response costs...." *United Technologies,* 33 F.3d at 103. We agree, and we hold that section 113(f) contribution actions may only be brought by persons who are liable or potentially liable under CERCLA.

2

No court has determined that OHM is actually liable under the statute, and the company disputes its liability, presumably because of the *de minimis* nature of its contribution and its remoteness in time from the actual release. Further, OHM denies that it is even *potentially* liable, claiming that it is not a PRP. Therefore OHM's own pleadings threaten to extinguish its section 113(f) contribution claims.

The terms "liable or potentially liable" and "potentially responsible party" (or PRP), are not defined in the statute. However, after examining the text and the structure of CERCLA, we think that the most sensible reading of the statute demands that, even before any determination of actual liability, a party may be "potentially liable" simply by being sued under the statute. *Cf.*

*Amcast Industr. Corp. v. Detrex Corp.,* 2 F.3d 746, 748-49 (7th Cir.1993) (once sued, a party may bring a counterclaim for contribution without admitting liability under CERCLA). The courts may eventually clear a CERCLA defendant or third-party defendant from liability; but until it does, such a defendant is at least *potentially* liable.

This interpretation of potential liability under section 113 allows parties to bring contribution actions at least as soon as they are sued under CERCLA.[2] By allowing parties to bring contribution claims before any finding or stipulation of liability, CERCLA makes possible the joinder of all potentially responsible parties in a single case, an early identification of potentially responsible parties for purposes of settlement, and as a single judicial apportionment of cleanup costs among responsible parties. Such a reading also allows parties to bring contribution actions after settlements, stipulations, or judicial determination of liability, within the three-year limitations period. Therefore we hold that, regardless of whether the company stipulates any responsibility for the spill, and before any court determines ultimate liability, OHM is nonetheless a potentially liable party by virtue of its status as a defendant in the suit.[3]

---

We express no opinion as to whether a party may be considered a PRP before being sued under CERCLA.

We note that there may be significant overlap between OHM's contribution claims and its 107(a) claims for response costs

We hold that the language of CERCLA permits only PRPs to bring contribution actions under section 113(f), but that OHM is a PRP under the statute because it is a defendant in the suit.  Therefore we reverse each of the district court's alternative grounds for dismissal of OHM's section 113(f) contribution claims as a matter of law and remand for further proceedings.

IV

Evans presents three independent grounds for summary judgment not addressed by the district court by which we may dismiss OHM's revived section 107(a) claim.  First, Evans asserts that, because OHM is actually liable under the statute as a PRP, the company may not bring an action under section 107(a).  Second, Evans disputes whether OHM may recover response costs, because it asserts that the Louisiana Oil project was not a "CERCLA quality" cleanup.  Third, Evans charges that the work was not consistent with the NCP. We need not address those issues here.  All involve difficult questions of fact regarding the extent of cleanup and the nature of OHM's involvement with the site.  These questions should be decided by the district court on a record more complete than the one available to us here.

Therefore we REVERSE the district court's dismissal of OHM's section 107(a) claim, as well as its dismissal of OHM's section

against the same defendants, but CERCLA imposes no bar on multiple grounds for recovery.  We also note that if the district court finds that OHM is not liable for response costs, the company obviously will cease to be a liable or potentially liable party.

18

113(f) contribution claims and REMAND both claims to the district court.