# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-14-00667-CV

**Texas Commission on Environmental Quality, Appellant**

**v.**

**Exxon Mobil Corporation; ExxonMobil Oil Corporation;
Pennzoil-Quaker State Company; and Shell Oil Company, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. D-1-GN-10-000772, HONORABLE AMY CLARK MEACHUM, JUDGE PRESIDING

## O P I N I O N

We withdraw the opinion and judgment dated April 8, 2016, and substitute the following opinion and judgment in their place. We deny appellants' motion for rehearing.

In this case of first impression, the Texas Commission on Environmental Quality contends that the two types of Superfund orders it is empowered to issue are mutually exclusive, meaning that one order cannot be issued under both ordering provisions. The Commission further contends that the Superfund order at issue here is an order issued under Section 361.188 of the Solid Waste Disposal Act and that the order therefore is governed by the substantial-evidence standard of review found in Section 361.321. *See generally* Tex. Health & Safety Code §§ 361.001-.966 ("Solid Waste Disposal Act" or "Act"). The pending case arose after the Commission issued an

administrative order related to cleanup of the Voda Petroleum State Superfund Site ("Voda Order"). The Commission appeals from a trial court's order denying its plea to the jurisdiction in a suit filed by appellees Exxon Mobil Corporation, ExxonMobil Oil Corporation, Pennzoil-Quaker State Company, and Shell Oil Company (collectively, "ExxonMobil and Shell") challenging the Voda Order. On appeal, the Commission asserts that because the supreme court in *City of Waco* conducted a substantial-evidence review in the absence of a contested-case or adjudicative hearing, this Court should reverse the trial court's order denying the Commission's plea to the jurisdiction and remand the case with a finding that the courts should review the Voda Order only under the substantial-evidence standard provided in Section 361.321 of the Act, not the preponderance-of-evidence standard provided in Section 361.322.[1] *See Texas Comm'n on Envt'l Quality v. City of Waco*, 413 S.W.3d 409 (Tex. 2013). Specifically, in three issues, the Commission contends that (1) the Act establishes two separate types of Superfund orders found in Sections 361.188 and 361.272 with distinct waivers of immunity found in Sections 361.321 and Section

---

[1] Section 361.321 allows "[a] person affected by a ruling, order, decision, or other act of the . . . commission" to appeal the action and establishes that "[e]xcept as provided by Section 361.322[g], in an appeal from an action of the commission . . . , the issue is whether the action is *invalid, arbitrary, or unreasonable*." Tex. Health & Safety Code § 361.321(a), (e) (emphasis added). As a preliminary matter, the parties acknowledge that due to a drafting omission when Subchapter F was amended, the reference in Section 361.321(e) to "Section 361.322(e)" should read "Section 361.322(g)." In addition, the parties agree that Section 361.321's "invalid, arbitrary, or unreasonable" standard means the scope of review set forth in Administrative Procedure Act Section 2001.174 (commonly termed "substantial-evidence" review) and is a review limited to the administrative record. *See Smith v. Houston Chem. Servs.*, 872 S.W.2d 252, 257 n.2 (Tex. App.—Austin 1994, writ denied) (construing subsection (e) as incorporating entire scope of review allowed by Texas Government Code Sections 2001.171-.174, including all subsections of Section 2001.174(2)(A)-(F)); *see also* Tex. Gov't Code § 2001.174 (establishing scope of review in contested case when law authorizes review under substantial-evidence rule or when law does not define scope of judicial review).

2

361.322, respectively; (2) the Commission issued the Voda Order only under Section 361.188 and therefore it is reviewable only under Section 361.321; and (3) courts lack subject-matter jurisdiction to review the Voda Order under any section other than Section 361.321. Because we conclude that Section 361.322 applies to administrative orders issued by the Commission under Section 361.188, we will affirm.

## STATUTORY FRAMEWORK

A brief overview of Superfund legislation will give context to our analysis of the two types of administrative orders at issue. The Solid Waste Disposal Act "is our state counterpart to two federal environmental statutes: the Resource Conservation and Recovery Act ('RCRA'), 42 U.S.C. §§ 6901–6992, and the Comprehensive Environmental Response, Compensation, and Liability Act ('CERCLA'), 42 U.S.C. §§ 9601–9675." *R.R. Street & Co. v. Pilgrim Enters.*, 166 S.W.3d 232, 238 (Tex. 2005). RCRA primarily regulates "on-going treatment, storage, and disposal of solid and hazardous wastes." *B.F. Goodrich Co. v. Murtha*, 958 F.2d 1192, 1201 (2d Cir.1992). CERCLA, on the other hand, is a remedial statute whose purpose is to facilitate a prompt response to a release or substantial threat of a release of hazardous substances into the environment, to provide broad authority for the cleanup of hazardous-substance sites, and to ensure that those responsible for the hazardous substances bear the cost of their actions. *United States v. Alcan Aluminum Corp.*, 964 F.2d 252, 258 (3d Cir.1992). Specifically, it allows the government to clean up contaminated sites using the Hazardous Substance Superfund, a trust fund, *see* 42 U.S.C. § 9601(11), and then recover costs from those parties who benefitted from the wastes that caused the harm, *see OHM Remediation Servs. v. Evans Cooperage Co.*, 116 F.3d 1574, 1578

3

(5th Cir. 1997). CERCLA creates a broad liability scheme that "extends liability all the way down the causal chain, from those who generate waste through those who dispose of it" and imposes strict liability that is joint and several when the harm is indivisible. *Id.* at 1578-79.

The Texas Legislature enacted the Solid Waste Disposal Act "to safeguard the health, welfare, and physical property of the people and to protect the environment by controlling the management of solid waste, including accounting for hazardous waste that is generated." Tex. Health & Safety Code § 361.002(a); *see also R.R. Street*, 166 S.W.3d at 238. The Act originally only regulated the collection, handling, storage, and disposal of solid wastes through a permitting program. Solid Waste Disposal Act, 61st Leg., R.S., ch. 405, 1969 Tex. Gen. Laws 1320 ("original Act"), *repealed and recodified by* Act of May 18, 1989, 71st Leg., R.S., ch. 678, 1989 Tex. Gen. Laws 2230, 2612-64. The original Act authorized the responsible agencies to issue permits governing the operation of and maintenance of solid-waste disposal sites and to establish minimum standards for the management and control of solid waste. Original Act at 1322-23. While the original Act imposed civil penalties for entities that violated its provisions and allowed any "person affected by any ruling, order, decision, or other act of the department or the board" to "appeal by filing a petition in the district court of Travis County," *see* original Act at 1326-28, it did not authorize the issuance of administrative orders like the Voda Order. The original Act did not empower the State to clean up contaminated sites or to order the persons responsible for the contamination to pay the cost of a cleanup.

After CERCLA's enactment, the Legislature amended the Act to create the State's own Superfund program within the existing solid-waste permitting statute. Act of May 27, 1985,

4

69th Leg., R.S., ch. 566, 1985 Tex. Gen. Laws 2166-83, *repealed and recodified by* Act of May 18, 1989, 71st Leg., R.S., ch. 678, 1989 Tex. Gen. Laws 2230, 2612-64. The current Act allows the State to issue two different types of administrative orders, giving it a broader reach than CERCLA. One type of administrative order concerns hazardous substances only ("188 order"), while the other applies to solid waste, a category that includes but is not limited to hazardous substances ("272 order"). Tex. Health & Safety Code §§ 361.188, .272; *see also id.* § 361.003(11) (defining "hazardous substances"), (12) (defining "hazardous waste"), (34) (defining "solid waste"). Like CERCLA, both types of orders impose strict liability that is joint and several when the harm is indivisible. *See id.* §§ 361.187(f) (potentially responsible party's ultimate liability for remediation determined under Subchapter I), .276 (Subchapter I provision establishing that liability is joint and several if release or threatened release is not proved to be divisible).

Specifically, a 188 order concerns the release or threatened release of hazardous substances at a hazardous-waste facility that presents an imminent and substantial endangerment to public health and safety or the environment and should be listed on the state Superfund registry.[2] *Id.* § 361.188(a)(1). Under this type of order, which is issued after an investigation/feasibility study and a public meeting to discuss a proposed remedial action, the State may order persons responsible

---

[2] Although Subchapter F is titled "Registry and Cleanup of Certain *Hazardous Waste* Facilities," the term "facility" in Subchapter F is defined as "any building, structure, installation, equipment, pipe, or pipeline (including any pipe into a sewer or publicly owned treatment works, well, pit, pond, lagoon, impoundment, ditch, landfill, storage container, motor vehicle, rolling stock, or aircraft), or any site or area where a *hazardous substance* has been deposited, stored, disposed of, or placed or otherwise come to be located. The term does not include any consumer product in consumer use or any vessel." Tex. Health & Safety Code § 361.181(c)(1) (emphasis added). Our references in this opinion to "hazardous-waste facilities" in connection with our discussion of Subchapter F mean "facilities" as the term "facility" is defined in Section 361.181.

5

for the release or threatened release to remediate the facility according to a schedule established by the Commission. *Id.* § 361.188(a)(3), (4), (6), (7). Under a 272 order, the Commission may restrain persons responsible for solid waste from allowing or continuing the release or threatened release of solid waste that presents an imminent and substantial endangerment to public health and safety or the environment and may require those persons to implement a remedial action plan designed to eliminate the release or threatened release ("272 order"). *Id.* § 361.272(a)-(b). We will examine in more detail below the interaction of the two Subchapters of the Act containing these two ordering provisions.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Voda Site is on approximately six acres located in Gregg County, Texas. The Site was used by Voda Petroleum, Inc. as an oil-blending and oil-recycling facility from about 1981 to 1991, when operations ceased and the Voda Site was abandoned. In the mid-1990s, both the Environmental Protection Agency and the predecessor agency to the Commission (the Texas Natural Resources Conservation Commission) investigated the Site to determine whether Voda Petroleum's operations had resulted in the release of hazardous substances. The EPA conducted a removal action in 1996, although the Site's ranking was too low to qualify the Site for the federal Superfund program. After the removal action, the EPA sought recovery of its costs and eventually entered into administrative orders of consent with companies it had named as potentially responsible parties; those orders established how much those parties owed the EPA. In 1999, the EPA referred the Voda Site to the State of Texas for any further remedial action required under state authority.

6

In November 2000, the Commission's predecessor agency proposed the Voda Site for listing on the state Superfund registry and notified parties that it believed had shipped materials to the Voda Site that they were potentially responsible for investigation and remediation of the Site, including providing them with notice that they could make a good-faith offer to conduct a remedial investigation and feasibility study. Several parties submitted written comments and objections, complaining that no empirical data supported finding imminent and substantial endangerment or listing the Voda Site on the state Superfund registry. No good-faith offer to conduct the investigation was received, so the Commission conducted the remedial investigation and feasibility study and proposed a remedial action.

After public notice and comment suggesting alternative remedies, the Commission studied other alternatives. It also provided the potentially responsible parties with the opportunity to fund or conduct the remedial action, but no good-faith offer to do so was received and accepted by the Commission, so no agreed order was issued. At a public meeting, the Commission considered what it described on the meeting agenda as "a Final Administrative Order (Final Order) pursuant to Texas Health and Safety Code Sections 361.188 and 361.272 for the Voda Petroleum, Inc. State Superfund Site." Although some potentially responsible parties were allowed to address the Commissioners, they were not allowed to present evidence to the Commission and they were informed that "the law governing this case does not provide for an adjudicatory hearing at this time." The Act contemplates that Superfund orders may be issued without holding any adjudicative hearing both in Subchapter F, which outlines the process for issuing an administrative order under Section 361.188, *see id.* §§ 361.184(e), .187(c), and in Section 361.274, which explicitly states that "[a]n

7

administrative order under Section 361.272 does not require prior notice or an adjudicative hearing before the commission," *id.* § 361.274.

On February 12, 2010, the Commission issued a unilateral administrative order for the Voda Site "to require persons responsible for such solid wastes or hazardous substances to perform the Work, including conducting the Remedial Activities, as authorized by ***Sections 361.188 and 361.272*** of the Act." (Emphasis added); *see id.* §§ 361.188 (establishing contents of final administrative order to be issued by Commission after consideration of all good-faith offers to perform remedial action at hazardous-waste facility determined to pose imminent and substantial endangerment to public health and safety or to environment), .272 (providing that Commission may issue administrative order to person responsible for solid waste if it appears there is actual or threatened release of solid waste that presents imminent and substantial endangerment to public health and safety or to environment). The Voda Order named ExxonMobil and Shell as potentially responsible parties, along with approximately 350 other entities, and ordered them to pay the Commission's response costs for cleanup of the Voda Site.

ExxonMobil and Shell filed suit appealing the Voda Order in Travis County District Court, challenging the Commission's actions under the Act and seeking declaratory relief under the Texas Uniform Declaratory Judgments Act, *see* Tex. Civ. Prac. & Rem. Code § 37.001. The Commission filed a counter-petition and third-party petition seeking cost recovery against ExxonMobil and Shell and other potentially responsible parties, *see* Tex. Health & Safety Code § 361.197(d) (requiring Commission to file cost-recovery action against each responsible party for total costs of remedial actions taken by Commission using funds from Hazardous and Solid Waste

8

Remediation Fee Account established in Section 361.133); enforcement of the order under Sections 361.321 and 361.322(g), *see id.* §§ 361.321(e) (except as provided by Section 361.322, "in an appeal from an action of the commission . . . , the issue is whether the action is invalid, arbitrary, or unreasonable"), 361.322(g) (in appeal of administrative order, Commission must prove by preponderance of evidence that "(1) there is an actual or threatened release of solid waste or hazardous substances that is an imminent and substantial endangerment to the public health and safety or the environment; and (2) the person made subject to the administrative order is liable for the elimination of the release or threatened release, in whole or in part"); injunctive relief, *see id.* § 361.273(2); and its attorneys' fees and costs, *see id.* § 361.341; Tex. Water Code § 7.108; Tex. Gov't Code § 402.006(c).

The parties proceeded to conduct discovery for the next few years. Then, approximately four years after the case was filed, the Commission filed its plea to the jurisdiction. In its plea and reply, it asserted that (1) a Superfund order can be issued under either Section 361.188 or Section 361.272, but not both; (2) the Voda Order was issued only under Section 361.188, not Section 361.272; (3) an order issued under Section 361.188 may only be reviewed under Section 361.321, which provides for review under the substantial-evidence standard; and (4) therefore, the trial court lacked subject-matter jurisdiction to review the Voda Order under any standard other than the one found in Section 361.321 because the Legislature has not granted any other waiver of sovereign immunity for 188 orders. Accordingly, the Commission asserted, judicial review under any other standard would violate the separation-of-powers doctrine. ExxonMobil and Shell responded that (1) nothing in the Act supports a conclusion that an administrative order may be

9

issued only under Section 361.188 or Section 361.272, but not both; (2) the Voda Order was issued under both Sections; (3) because the Voda Order was issued under both Sections, it should be reviewed under the preponderance-of-evidence standard provided for in Section 361.322; and (4) the separation-of-powers doctrine does not bar judicial review under Section 361.322 because the order is not a quasi-legislative act and thus the Legislature is not prohibited from authorizing its judicial review via trial de novo. In addition, ExxonMobil and Shell contended that the Commission's plea did not implicate the trial court's subject-matter jurisdiction because the Commission sought only a decision on what standard of review the trial court should use and did not challenge the waiver of sovereign immunity found in the appellate provisions of the Act. The trial court denied the Commission's plea to the jurisdiction. This appeal followed.

**ANALYSIS**

In three issues on appeal, the Commission asserts that (1) the Act allows two different types of Superfund orders, 188 orders and 272 orders, which are separate and distinct and have individual waivers of immunity and different standards of review under Section 361.321 and Section 361.322, respectively, and a single order cannot arise under both sections; (2) it issued the Voda Order only under Section 361.188 of the Act and therefore it may only be reviewed under Section 361.321's substantial-evidence standard; and (3) courts lack subject-matter jurisdiction to review the Voda Order under any section other than Section 361.321 because of the doctrine of sovereign immunity. We turn first to the question of whether the Act makes the two types of orders mutually exclusive and whether the two types of orders are subject to different standards of review.

10

**Construction of the Act's provisions for registry and cleanup of Superfund sites and for enforcement of administrative orders**

We review issues of statutory construction de novo. *Texas Lottery Comm'n v. First State Bank of DeQueen*, 325 S.W.3d 628, 635 (Tex. 2010). Our primary objective when construing statutes is to give effect to the Legislature's intent, which we seek first and foremost in the text of the statute. *First Am. Title Ins. Co. v. Combs*, 258 S.W.3d 627, 631-32 (Tex. 2008). The plain meaning of the text is the best expression of legislative intent, unless a different meaning is apparent from the context or application of the plain language would lead to absurd results. *Molinet v. Kimbrell*, 356 S.W.3d 407, 411 (Tex. 2011). When a statute's words are unambiguous, "it is inappropriate to resort to rules of construction or extrinsic aids to construe the language." *City of Rockwall v. Hughes*, 246 S.W.3d 621, 626 (Tex. 2008).

Moreover, we determine legislative intent from the entire statute, not just its isolated provisions. *20801, Inc. v. Parker*, 249 S.W.3d 392, 396 (Tex. 2008). "Thus, we 'read the statute as a whole and interpret it to give effect to every part.'" *State ex rel. State Dep't of Highways & Pub. Transp. v. Gonzalez*, 82 S.W.3d 322, 327 (Tex. 2002) (quoting *Jones v. Fowler*, 969 S.W.2d 429, 432 (Tex. 1998)). Consequently, when considering the interplay of the various Sections of the Act, we must consider their role in the broader statutory scheme. *See 20801, Inc.*, 249 S.W.3d at 396. With these principles in mind, we turn to consideration of the two types of Superfund orders that the Act allows the Commission to issue.

**188 orders**

Section 361.188 is found in Subchapter F, which covers the registry and cleanup of certain hazardous-waste facilities. *See* Tex. Health & Safety Code §§ 361.181-.203 ("Registry and Cleanup of Certain Hazardous Waste Facilities"). Under this Subchapter, the Commission is required to annually publish an updated state registry identifying those facilities "that may constitute an imminent and substantial endangerment to public health and safety or the environment due to a release or threatened release of hazardous substances into the environment" and identifying the relative priority for action at each listed facility. *Id.* § 361.181. Subchapter F further establishes a process by which the Commission may investigate listed facilities or facilities that the executive director has reason to believe should be listed on the registry. *Id.* § 361.182.

Subchapter F empowers the executive director to submit requests for information and document production to persons who may have relevant information. *Id.* § 361.182. The Commission may not list a facility on the registry if the potential endangerment can be resolved by (1) the owner or operator; (2) "some or all of the potentially responsible parties identified in Subchapter I" (which deals with enforcement), *see id.* § 361.271 (defining person responsible for solid waste), under an agreed administrative order issued by the Commission; or (3) a voluntary cleanup agreement under Subchapter S. *Id.* § 361.183.

If, however, the executive director determines that a facility is eligible for listing on the state registry, the Commission must publish notice of its intent to list the facility and allow interested parties to submit written comments and request a public meeting to discuss the proposed listing. *Id.* § 361.184(a). Furthermore, the executive director must "make all reasonable efforts to

12

identify all potentially responsible parties for remediation of the facility" and notify them of the proposed listing and procedure for requesting a public meeting, as well as notice of the meeting if one is requested. *Id.* § 361.184(b)-(c).

If a public meeting is held, it "is legislative in nature and not a contested case hearing under Chapter 2001, Government Code." *Id.* § 361.184(e). The meeting's purpose is only to obtain "additional information regarding the facility relative to the eligibility of the facility for listing on the state registry and the identification of potentially responsible parties." *Id.* In other words, the meeting does not provide an opportunity for potentially responsible parties to contest liability.

After the public meeting (or opportunity to request it has passed) and before the Commission lists the facility on the registry, it must allow all identified potentially responsible parties the opportunity to fund or conduct "a remedial investigation/feasibility study." *Id.* § 361.185. If a good-faith offer from all or some potentially responsible parties is received within 90 days after the Commission issues notice of the potential listing, then those making the offer have an additional 60 days to negotiate an agreed administrative order from the Commission, which must include a scope of work but which "may not require the participating potentially responsible parties to agree to perform the remedial action or admit liability for the facility remediation." *Id.* § 361.185(a). Section 361.185 empowers the Commission to conduct or complete the study using funds from the hazardous-waste disposal-fee fund if no good-faith offer to do so is received. *Id.* § 361.185(b). This Section also encourages potentially responsible parties to perform the study by providing that costs for Commission oversight of the study may not be assessed against those parties who fund or perform the study, but full costs for Commission oversight may be assessed against nonparticipating

13

potentially responsible parties "who are ultimately determined to be liable for remediation of the facility under [the Act] or who subsequently enter into an agreed order relative to the remediation of the facility." *Id.* § 361.185(c).

Subchapter F further provides the Commission with the ability to select, after a public meeting, the appropriate land use (if other than residential) for the land upon which a facility is located that is the subject of a remedial investigation/feasibility study for the purpose of selecting a proposed remedial action. *Id.* § 361.1855. The Commission also controls whether a partial or total removal action may be performed at a facility eligible for listing on the registry and whether an owner or operator may substantially change the use of the facility so that any change does not interfere with a proposed or ongoing remedial investigation/feasibility study. *Id.* § 361.186.

After the remedial investigation/feasibility study is complete, the executive director must select a proposed remedial action, and the Commission must hold a public meeting to discuss the proposed action. *Id.* § 361.187(a). Again, notice of the meeting must be provided to each potentially responsible party, but the public meeting is legislative in nature and not a contested-case hearing and is held for the purpose of obtaining "additional information regarding the facility and the identification of additional potentially responsible parties." *Id.* § 361.187(b)-(c). While those in attendance may comment on the proposed action, and the executive director may choose to revise the proposed remedial action in light of the presentations, this meeting does not provide an opportunity for potentially responsible parties to challenge liability. *See id.* § 361.187(c).

After the public meeting, the Commission must allow all identified potentially responsible parties the opportunity to fund or perform the proposed remedial action.

14

*Id.* § 361.187(d). If a good-faith offer from all or some potentially responsible parties is received within 60 days after the public meeting, then those making the offer have an additional 60 days to negotiate an agreed administrative order from the Commission, which must include a scope of work, but again the Commission "may not require an admission of liability in the agreed administrative order." *Id.* Like the feasibility-study Section, this Section also encourages potentially responsible parties to perform the remedial action by providing that costs for Commission oversight of the action may not be assessed against those parties who fund or perform the action, but full costs for Commission oversight may be assessed against nonparticipating potentially responsible parties "who are ultimately determined to be liable for remediation of the facility." *Id.* § 361.187(e).

This Section further provides that the executive director may authorize a potentially responsible party to conduct a partial remedial action if (after notice and opportunity for comment to all other potentially responsible parties) the executive director determines that the release or threatened release is "divisible." *Id.* § 361.187(f). The Section defines "divisible" as meaning "that the hazardous substance released or threatened to be released is capable of being managed separately under the remedial action plan," but it specifically provides that "[a] determination of divisibility by the executive director does not have res judicata or collateral estoppel effect on a potentially responsible party's ultimate liability for remediation of the facility under Subchapter G ['Enforcement; Criminal and Civil Penalties [Repealed]'] or I ['Enforcement; Administrative Orders Concerning Imminent and Substantial Endangerment']." *Id.*

15

Finally, Section 361.188 itemizes the required contents of a final administrative order that the Commission "shall issue" after considering all good-faith offers to perform a remedial action at a facility eligible for listing on the state registry. The final administrative order must:

(1)     list the facility on the state registry, thus determining that the facility poses an imminent and substantial endangerment to public health and safety or the environment;

(2)     specify the appropriate land use for purposes of selecting the appropriate remedial action;

(3)     specify the selected remedial action;

(4)     list the parties determined to be responsible for remediating the facility;

(5)     make findings of fact describing actions voluntarily undertaken by responsible parties;

(6)     order the responsible parties to remediate the facility and, if appropriate, reimburse the hazardous waste disposal fee fund for remedial investigation/feasibility study and remediation costs;

(7)     establish a schedule for completion of the remedial action;

(8)     state any determination of divisibility of responsible party liability; and

(9)     give notice of the duties and restrictions imposed by Section 361.190 ["Change in Use of Listed Facility"].

*Id.* § 361.188(a). In addition, this Section establishes that "[t]he provisions in Subchapters I, K, and L *relating to administrative orders* apply to orders issued under this section." *Id.* § 261.188(b) (footnote omitted) (emphasis added); *see also id.* §§ 361.271-.279 (Subchapter I: Enforcement; Administrative Orders Concerning Imminent & Substantial Endangerment); 361.321-.323 (Subchapter K: Appeals; Joinder of Parties); 361.341-.345 (Subchapter L: Cost Recovery).

16

**272 orders**

Section 361.272 is found in Subchapter I, which covers enforcement and administrative orders concerning imminent and substantial endangerment, and is one of the Subchapters whose provisions relating to administrative orders apply to 188 orders. *See id.* §§ 361.271-.280; *see also id.* § 361.188(b). Section 361.271 defines "persons responsible for solid waste" and tracks the categories found in CERCLA, holding responsible current and former owners or operators of a solid-waste facility; "arrangers" of storage, disposal, processing, or transport of solid waste; and transporters of solid waste. *Id.* § 361.271(a); *see also* 42 U.S.C. § 9607(a). Section 361.272 allows the Commission to:

(a)     . . . issue an administrative order to a person responsible for solid waste if it appears that there is an actual or threatened release of solid waste that presents an imminent and substantial endangerment to the public health and safety or the environment:

  (1)     from a solid waste facility at which solid waste is stored, processed, or disposed of; or

  (2)     at any site at which one or more of those activities concerning solid waste have been conducted in the past, regardless of whether the activity was lawful at the time.

(b)     An administrative order may be issued under this section to:

  (1)     restrain the person from allowing or continuing the release or threatened release; and

  (2)     require the person to take any action necessary to provide and implement a cost effective and environmentally sound remedial action plan designed to eliminate the release or threatened release.

17

*Id.* § 361.272(a)-(b). In addition, the Commission may sue for injunctive relief to restrain a responsible person from allowing or continuing the release or threatened release and to require the person to take actions necessary to provide and implement a remedial action plan. *Id.* § 361.273. Subchapter I also specifically establishes that "[a]n administrative order under Section 361.272 does not require prior notice or an adjudicative hearing before the commission." *Id.* § 361.274. Section 361.275 enumerates the defenses to liability and states that a person responsible for solid waste is liable under Section 361.272 or 361.273 unless the person can establish by a preponderance of the evidence that the release or threatened release was caused solely by an act of God, an act of war, an act or omission of a third person, or any combination of those events. *Id.* § 361.275(a). Section 361.276 provides for the apportionment of liability if the release or threatened release is proved by a preponderance of the evidence to be divisible and provides that if it is not proved divisible, persons liable under Section 361.272 or 361.273 are jointly and severally liable for eliminating the release or threatened release. *Id.* § 361.276(a). The Section defines "divisible" as meaning "that the waste released or threatened to be released has been and is capable of being managed separately under the remedial action plan." *Id.* § 361.276(b).

### Issuing an order under both Sections

The Commission contends that the two types of Superfund orders are mutually exclusive and one administrative order cannot be issued under both provisions, but nothing in either the specific provisions or in the overall context of the statutory scheme leads to that conclusion. We presume that the Legislature chooses a statute's language with care, purposefully choosing each word it includes, while purposefully omitting words not chosen. *TGS-NOPEC Geophysical Co. v. Combs*,

18

340 S.W.3d 432, 438-39 (Tex. 2011). If the Legislature had intended to make the two orders mutually exclusive, it would have said so. Instead, it crafted a statutory scheme under which the Commission is empowered (1) to issue an order that results in a hazardous-waste facility being listed on the state Superfund registry after a lengthy process involving public meetings before completion of an investigation/feasibility study and selection of a remedial action and (2) to issue an order to restrain a release or threatened release of solid waste and require the provision and implementation of a remedial action plan without the requirements of public meetings or an investigation/feasibility study and without prior notice to potentially responsible parties.

Nothing in the Act precludes the Commission from issuing an order under both sections simultaneously. In fact, the Legislature, by stating that "[t]he provisions in Subchapters I, K, and L relating to administrative orders apply to orders issued under this Section [361.188]," Tex. Health & Safety Code § 361.188(b), made the provisions in Section 361.272, which is in Subchapter I and concerns "Administrative Orders Concerning Imminent and Substantial Endangerment," apply to 188 orders. *See id.* § 361.188(a)(1) (establishing that by issuing final administrative order under this Section listing facility on state registry, Commission "thus determin[es] that the facility poses an *imminent and substantial endangerment* to public health and safety or the environment (emphasis added)). Allowing the Commission to issue an order under both Sections 361.188 and 361.272 comports with the Act's purpose of protecting the environment by allowing the Commission to include the broader category of "solid waste" in an order listing a site on the state Superfund registry, which means it may be able to include more potentially responsible parties, while having the two orders in separate sections gives the Commission the flexibility to issue a 272 order without going

19

through the 188 process. We conclude that it is possible for the Commission to issue one order under both Sections 361.188 and 361.272.

### Subchapter K: appeals; joinder of parties

Subchapter K contains Sections 361.321 and .322, both of which concern appeals, and Section 361.323, a provision concerning joinder of parties in an injunction action filed by the State under Section 361.273. At issue is whether a 188 order is governed on appeal by Section 361.321 or Section 361.322. Section 361.321 establishes a substantial-evidence standard of review under which "a person affected by a ruling, order, decision, or other act of the commission" must prove that the Commission's action "is invalid, arbitrary, or unreasonable," i.e., that the Commission's action is subject to substantial-evidence review.[3] *See id.* § 361.321(e). Section 361.322, on the other hand, provides that when "any person subject to an administrative order under Section 361.272" appeals the order by filing a petition:

> the district court shall uphold the administrative order if the Commission proves by a preponderance of the evidence that:
>
> (1)    there is an actual or threatened release of solid waste or hazardous substances that is an imminent and substantial endangerment to the public health and safety or the environment; and
>
> (2)    the person made subject to the administrative order is liable for the elimination of the release or threatened release, in whole or in part.

---

[3] *See supra* note1.

*Id.* § 361.322(g). In addition, Section 361.322 provides that "[i]f the appropriateness of the selected remedial action is contested in the appeal of the administrative order, the remedial action shall be upheld unless the court determines that the remedy is arbitrary or unreasonable." *Id.* § 361.322(h).

The Commission asserts that both the statutory history and the plain language of the Act show that 188 and 272 orders are separate and distinct and have separate provisions for appeal. In particular, the Commission contends that because specific language prevails over general, Section 361.322 must apply only to 272 orders, and Section 361.321 must apply to all other types of orders and decisions. We, however, must first look to the plain language of the statute for the Legislature's intent, "and only if we cannot discern legislative intent in the language of the statute itself do we resort to canons of construction or other aids such as which statute is more specific." *First State Bank of DeQueen*, 325 S.W.3d at 639.

The Commission emphasizes that the "plain language" of Section 361.321 applies to administrative orders under Section 361.188 because it applies to any "order . . . of the commission," while Section 361.322 states that it applies to an "administrative order under Section 361.272." However, the language found in Section 361.188 is clear that "[t]he provisions in Subchapters I, K, and L *relating to administrative orders* apply to orders issued under this section." Tex. Health & Safety Code § 361.188(b) (footnote omitted) (emphasis added). The Commission urges that this language only incorporates provisions from Subchapters I, K, and L to the extent that applying those provisions would not lead to absurd or nonsensical results. The Commission concedes that the deadline for appeal and the standards of review in Section 361.322 "relate to administrative orders," *see id.* § 361.188(b), but it argues that applying the deadline and standards

21

of review to 188 orders would lead to absurdities. It makes the circular argument that because the deadlines for appeal and standards of review are different for each type of order, the orders must be separate and distinct, and "the Legislature would not have deliberately written a statute providing for two different deadlines for the appeal of a single order, or two different standards of review for a single element, such as liability, within an order." This argument depends on the Commission's mistaken premise that the Commission cannot issue one order under both Section 361.188 and Section 361.272.

We agree that the Legislature would not deliberately write a statute providing two different deadlines for appealing one order or two different standards of review for an element of an order. Having already concluded that one order can be issued under both Sections, however, we further conclude that under a plain reading of Section 361.188(b), the Legislature expressed its intent that both Sections 361.188 and 361.272 should be governed by one set of deadlines for appeal and standards of review—those that are found in Section 361.322. This conclusion is further reinforced by examining Subchapter I, which is entitled "Enforcement; Administrative Orders Concerning Imminent and Substantial Endangerment" and is the Subchapter in which Section 361.272 is located.

As explained above, by making the provisions in Subchapter I applicable to 188 orders, the Legislature made the provisions in Section 361.272 applicable to 188 orders. Since Section 361.272 applies to 188 orders, references to administrative orders issued under Section 361.272 must also be references to administrative orders issued under Section 361.188. Furthermore, if we read "issued under Section 361.272" to preclude application to 188 orders, the Legislature's declaration that "[t]he provisions in Subchapter[] I . . . *relating to administrative*

22

***orders*** apply to orders issued under this section" would be rendered meaningless. *See Columbia Med. Ctr. of Las Colinas, Inc. v. Hogue*, 271 S.W.3d 238, 256 (Tex. 2008) (courts "must not interpret the statute in a manner that renders any part of the statute meaningless or superfluous"); *City of Marshall v. City of Uncertain*, 206 S.W.3d 97, 105 (Tex. 2006) (when possible, courts must give effect to "every sentence, clause, and word of a statute" so that no part is rendered superfluous); *see also* Tex. Gov't Code § 311.021(2) (establishing presumption that when Legislature enacts a statute, "the entire statute is intended to be effective"). Every reference in Subchapter I to an "administrative order" specifically references either Section 361.272 or "a person responsible for solid waste under Section 361.271," i.e., the target of a 272 order. *See* Tex. Health & Safety Code §§ 361.273 (Commission may seek injunction to restrain a person responsible for solid waste under Section 361.271 as alternative to administrative order), .274 ("administrative order under Section 361.272" does not require prior notice or adjudicative hearing), .275 (establishing that "person responsible for solid waste under Section 361.271 is liable under Section 361.272 or 361.273" unless person can establish defenses by preponderance of the evidence), .277 (establishing effect of settlement agreement with State to take remedial action to abate an actual or threatened release of solid waste that is an imminent and substantial endangerment to the public health and safety or the environment "under an administrative order issued under section 361.272"). Consequently, references in Subchapter I to "an administrative order under section 361.272" must also incorporate an administrative order issued under Section 361.188.

The same logic applies to Subchapter K. Section 361.322 concerns appeals of administrative orders issued under Section 361.272. As explained above, the reference to "an administrative order under Section 361.272" must also incorporate a 188 order because Section

23

361.272 applies to 188 orders. In addition, of the two appellate provisions, Section 361.322 is the only one that relates to an appeal by "*any person subject to an administrative order*." *Id.* § 361.322(a) (emphasis added). In contrast, Section 361.321 allows "*a person affected* by a ruling, order, decision or other act of the . . . commission" to appeal the Commission's action. *Id.* § 361.321(a) (emphasis added). The Act defines "person affected" as:

> a person who demonstrates that the person has suffered or will suffer actual injury or economic damage and, if the person is not a local government:
>
> > (A)　　is a resident of a county, or a county adjacent or contiguous to the county, in which a solid waste facility is to be located; or
> >
> > (B)　　is doing business or owns land in the county or adjacent or contiguous county.

*Id.* § 361.003(24). This provision applies to persons residing or doing business in a county or adjacent or contiguous county "in which a *solid waste* facility *is to be located*" who can demonstrate that they have suffered or will suffer actual injury or economic damage from the contemplated solid-waste facility. *Id.* (emphasis added). Subchapter F and Section 188 orders concern the registry and cleanup of existing *hazardous-waste* facilities, which again are defined for purposes of the subchapter as "any site or area where a *hazardous substance* has been deposited, stored, disposed of, or placed or otherwise come to be located." *Id.* § 361.181(c)(1) (emphasis added). "[P]arties determined to be responsible for remediating the facility" and ordered to remediate the facility in a 188 order at the conclusion of the Subchapter F registry and cleanup process, *see id.* § 361.188(a)(4), (6), do not fit the definition of a "person affected" who may appeal a Commission action under Section 361.321. Furthermore, Subsection 361.322(g) includes "hazardous substances," the

materials regulated by 188 orders, as part of the preponderance-of-the-evidence standard of review. *See id.* § 361.322(g) (Commission must prove "actual or threatened release of solid waste or hazardous substances"). Unless Section 361.322 applies to 188 orders, the inclusion of "hazardous substances" is superfluous because 272 orders apply to "solid waste," which includes "hazardous substances." *See Columbia Med. Ctr.*, 271 S.W.3d at 256. Similarly, Section 361.322's description of parties who must be joined includes "any other person who is or may be liable for the elimination of the actual or threatened release of *solid waste or hazardous substances* governed by the administrative order," and the inclusion of "hazardous substances" is superfluous unless Section 361.322 applies to 188 orders. *See* Tex. Health & Safety Code § 361.322(d). Considering the statute as a whole, we conclude that Section 361.322 applies to both 188 orders and 272 orders, and we overrule the Commission's first issue. *See First State Bank of DeQueen*, 325 S.W.3d at 639 (holding that when courts can discern legislative intent from statute's language, courts need not use canons of construction, such as which statute is more specific, or other aids, such as legislative history).

Although this conclusion means that we need not reach the Commission's second issue contending that it issued the Voda Order only under Section 361.188, we note that the plain language of the Voda Order indicates that it was issued under both Sections 361.188 and 361.272. *See Office of Pub. Util. Counsel v. Texas-New Mexico Power Co.*, 344 S.W.3d 446, 450-51 (Tex. App.—Austin 2011, pet. denied) (courts apply same rules when construing order of administrative agency that are applied when construing statutes). In addition to the introductory language at the beginning of the Order, there are provisions throughout the Order that indicate it was issued under Section 361.272 as well as Section 361.188, including references to "solid waste," not just "hazardous substances." We also note that the Commission conducted itself in the trial court for

25

four years as if the Order were appealable under Section 361.322, not just Section 361.321.  After issuing an order incorporating both Sections and proceeding for years as if the parties would try the case under a preponderance-of-the-evidence standard, the Commission's reversal of position for strategic reasons does not change the essential nature of the Voda Order.

### Sovereign immunity

In its third issue, the Commission does not dispute that both Sections 361.321 and 361.322 contain waivers of immunity because the Legislature has conferred a right of judicial review; instead, it asserts that courts lack subject-matter jurisdiction to review the Voda Order under any section other than Section 361.321.[4]  We overrule this issue based on our conclusion that Section 361.322 applies to 188 orders.

---

[4] ExxonMobil and Shell assert on appeal that this Court lacks jurisdiction to hear the appeal, essentially reurging their argument that the Commission's plea did not implicate the trial court's subject-matter jurisdiction because the Commission did not challenge the waiver of sovereign immunity found in the appellate provisions of the Act and instead sought only a decision on what standard of review the trial court should use.  Our jurisdiction over this case is derived from Civil Practice and Remedies Code Section 51.014(a)(8), which permits the interlocutory appeal of an order denying a plea to the jurisdiction by a governmental unit.  That is the procedural posture of this case.  More importantly, the substance of the Commission's challenge is that Section 361.322 does not contain a waiver of immunity for the type of administrative order issued in this case.  "There is [generally] no right to judicial review of an administrative order unless a statute explicitly provides that right . . . ."  *Houston Mun. Emps. Pension Sys. v. Ferrell*, 248 S.W.3d 151, 158 (Tex. 2007).  While answering that question here may have the effect of determining which standard of review applies, the answer itself implicates the trial court's jurisdiction.  The Texas Supreme Court's decision in *City of Waco* does not change our analysis of the statutory provisions at issue in this case.  *See Texas Comm'n on Envt'l Quality v. City of Waco*, 413 S.W.3d 409, 411, 415, 420, 424 (Tex. 2013) (reviewing Commission's denial of a contested-case hearing request in a permitting matter for an abuse of discretion when the underlying statute did not specify a standard of review and when party seeking contested-case hearing "was afforded several opportunities to make a record in the agency").

26

## CONCLUSION

Having concluded that Section 361.322 applies to administrative orders issued under both Sections 361.188 and 361.272 and that Section 361.322 contains a waiver of sovereign immunity, we affirm the trial court's order denying the Commission's plea to the jurisdiction.

_____

Cindy Olson Bourland, Justice

Before Justices Puryear, Pemberton, and Bourland

Affirmed on Motion for Rehearing

Filed: October 31, 2016